MISSOURI PACIFIC RAILWAY COMPANY V. OSWALD BAIER, ADMINISTRATOR.

FILED JUNE 29, 1893.   No. 5271.

1. **Evidence:** A COPY OF LETTERS OF ADMINISTRATION, when duly certified to be true and correct copies of such letters as appear from the original on file in the county court, wherein such letters of administration were granted, is admissible in evidence with the same effect as the original.

2. ———: RES GESTÆ: A DECLARATION, to be a part of the *res gestæ*, need not necessarily be coincident in point of time with the main fact proved.   It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause.

3. **Carriers:** DEATH BY WRONGFUL ACT: MEASURE OF DAMAGES.   In an action by an administrator under the provisions of chapter 21, Compiled Statutes, to recover damages for the death of his intestate, it is proper to prove the value of the services of the deceased which the next of kin of the deceased could reasonably expect but for the injury would have been rendered

| | |
|---|---|
| 37 | 235 |
| 38 | 236 |
| f39 | 43 |
| 39 | 614 |
| 39 | 806 |
| 37 | 235 |
| f40 | 622 |
| 40 | 731 |
| f40 | 891 |
| 41 | 126 |
| 41 | 590 |
| 37 | 235 |
| 43 | 301 |
| f43 | 727 |
| 37 | 235 |
| 44 | 458 |
| 44 | 860 |
| 37 | 235 |
| 45 | 407 |
| 37 | 235 |
| 46 | 45 |
| 37 | 235 |
| f48 | 98 |
| 48 | 167 |
| 48 | 460 |
| 48 | 640 |
| 37 | 235 |
| f50 | 233 |
| 53 | 677 |
| 54 | 304 |
| 54 | 677 |
| 37 | 235 |
| 58 | 681 |
| f58 | 683 |
| f58 | 801 |
| 37 | 235 |
| 59 | 694 |

in their behalf, the natural expectancy of life of the deceased just previous to receiving the injury which resulted in her death having been.duly shown.

4. ———: ———: NEGLIGENCE: EVIDENCE: INSTRUCTIONS. The existence of negligence should be proved and passed upon by the jury as any other fact. It is improper to state to the jury a circumstance or group of circumstances as to which there has been evidence on the trial, and instruct that such fact or group of facts amount to negligence *per se.* At most, the jury should duly be instructed that such circumstances, if established by a preponderance of the evidence, are properly to be considered in determining the existence of negligence.

5. Railroad Companies: INJURY TO PASSENGERS: RIGHT OF RECOVERY: PRESUMPTION OF NEGLIGENCE. Under the provisions of section 3, article 1, chapter 72, Compiled Statutes of Nebraska, it is only necessary to a right of recovery against a railroad company, to show that the person injured. was at the time being transported as a passenger over the defendant's line of railroad, and that the injury resulted from the management or operation of said railroad, a presumption thereupon arises that such management or operation was negligent, and it can be met only by showing that the injury arose from the criminal negligence of the party injured, or, that the injury complained of was the result of the violation of some express rule or regulation of said railroad company actually brought to the notice of the party injured.

ERROR from the district court of Otoe county. Tried below before CHAPMAN, J.

*B. P. Waggener* and *C. W. Seymour,* for plaintiff in error.

*John C. Watson, E. H. Wooley,* and *H. D. Travis,* contra.

RYAN, C.

The defendant in error filed his petition in the district court of Otoe county, Nebraska, alleging, in substance, that on the 26th day of December, 1889, the Missouri Pacific Railway Company received one Katharine Baier as a pas-

senger on its said railroad from Nehawka to Lincoln; that at Weeping Water, to continue her journey, it was necessary for her to change from one of defendant's cars to another, and said railway company was thereby bound to furnish her suitable means, time, and instructions to make said change; that it failed and neglected to do its duty in these matters, and carelessly, negligently, and wrongfully performed its duty towards her in making said change; that the defendant furnished no platform for that purpose; that the ground was three or four feet below the lowest step on said car, and that the defendant then and there gave her wrong instructions about making said change, and did not give her time to make said change; in consequence whereof, when the said train stopped at the defendant's water-tank before reaching the depot at Weeping Water, the conductor of said train having wrongfully, carelessly, and negligently instructed her to get off said train, she did get off at said place, and the conductor finding that he had made a mistake immediately instructed her to get on again, and further instructed her to get off of said train when the next stop should be made; that afterwards said train of cars pulled by and at some distance beyond said station at Weeping Water, and the said Katharine Baier, in accordance with the instructions given her by said conductor upon the stoppage of said train of cars, attempted to get off, but by reason of said train making a sudden jerk while she was in the act of leaving said train to change to the other which should take her to Lincoln, she was without fault on her part seriously injured, from the effects of which injury on the 3d day of January, 1890, she died; that she left eight minor children, naming them, which were her only children and next of kin, and that they were dependent upon her for a mother's care and attention, and had been otherwise injured by the death of said Katharine Baier to the amount of $5,000.

The plaintiff in error filed a general denial, and further

pleaded the defense of contributory negligence of Katharine
Baier, to which answer the defendant in error filed a reply
in denial.

Upon a trial of the issues had to a jury a verdict was
rendered for the full amount prayed, and a motion for a
new trial being overruled, judgment was entered on the
verdict; to reverse which plaintiff in error filed its peti-
tion in this court.

On the trial of the case in the district court the plaint-
iff in error requested the court to give forty-nine instruc-
tions, and asked that the jury be required to answer
twenty-nine interrogatories submitted for that purpose.
The petition in error in this court assigns seventy-nine
alleged errors.   In view of these facts no attempt will be
made to consider *seriatim* the several matters complained
of in detail, or in the order in which they occur.

Upon the trial there was offered in evidence and admit-
ted over the objection of the defendant, the railroad com-
pany, a duly authenticated copy of the letters of admin-
istration upon the estate of Katharine Baier, issued in the
usual form by the county court of Cass county, Nebraska,
to Oswald Baier.   It is insisted that the admission in evi-
dence of this copy was error, for that it did not fall within
the description of documents of which copies may be
introduced under the provisions of section 408 of the Code
of Civil Procedure.   This section reads as follows: "Duly
certified copies of all records and entries or papers belong-
ing to any public office, or by authority of law filed to be kept
therein, shall be evidence in all cases of equal credibility
with the original records or papers so filed." The certificate
of the county judge by whom was issued the aforesaid letters
of administration, and by whom a copy thereof under his
seal was authenticated, recited that the said copy was a
true and correct one of the letters of administration of the
estate of Katharine Baier, deceased, as appeared from the
original on file in said judge's office.   This was sufficient

to entitle said copy to consideration under the strictest construction of said section.

In argument it is insisted that it was error to permit the following question to be answered by the witness Johnson. His testimony had reference to the accident on account of which this suit was brought; following which evidence was this question and answer:

Q. Has there been any change since that time that you know of in making up trains?

Objected to, as incompetent, irrelevant, and immaterial and not a proper issue in this case. Overruled and exception.

A. I don't know whether there is or not of my personal observation. I heard there had been a change.

There might be imagined circumstances under which a question of this character, followed by evidence of a certain kind, would be prejudicial to the railroad company. Upon what ground the existence of such prejudice is founded in this case is not apparent, for the argument of the plaintiff in error is simply that the only effect of this evidence was to prejudice the defendant. We can observe no such necessary or even natural result of that kind which could arise upon either the question or answer of this witness.

It is insisted, on argument, that the district court should have sustained the motion of the railroad company to strike out all of the statements in the witness's testimony relative to what Mrs. Baier told him of the accident, because it was hearsay, no part of the *res gestæ*, and was very prejudicial to said company. The evidence complained of was given by James Johnson. It is as follows:

Q. State how you came to be there at the depot that morning.

A. I brought some people down there from my house to take the train.

Q. Go on and state to the jury what you saw there in connection with this accident.

A. I was standing on the platform in front of the depot— I think it was in front of the depot—when the train pulled in. They stopped a few minutes in front of the depot; when they uncoupled the Lincoln car they pulled out and a few minutes after I heard a scream; I started to run in the direction from which the scream came and run a little over a hundred feet I think, and I found a lady laying across the platform. I picked her up, lifted her partly up, and then there was a gentleman, I think it was Fenstermaker, came with a lantern, and I saw her legs were cut off, and I think I told him he had better run for a doctor. While I was helping her up I asked her who she was and she told me.

Q. I will ask you if while you were helping her up there if the conductor came down there?

A. Yes, sir.

Q. Now I will ask you to state what Mrs. Baier stated at that time as to how the accident occurred.

Objected to, as incompetent, irrelevant, immaterial, hearsay, and no proper foundation laid. Overruled and exception.

(Examined by Waggener, attorney for railroad company:)

Q. Had the train gone at the time she made this statement:

A. No, sir; the train had pulled up to the platform and stopped.

Q. How long had the train been away from the spot where she was injured?

A. I don't think the train had come to a stop when I got there.

Q. How long after the scream until you heard this conversation?

A. Could not have been, I think, two minutes.

Q. First place Fenstermaker came with a lantern?

A. Yes, sir.

Missouri P. R. Co. v. Baier.

Q. You saw how badly she was injured?

A. Yes, sir.

Q. You told him to go for a doctor?

A. Yes, sir.

Q. He did go?

A. Yes, sir.

Q. You had the conversation with her after that?

A. Yes, sir.

(Question by court:)

Q. Was the conversation at that time?

A. Yes, sir.

(Examination resumed by Wooley, attorney for defendant in error:)

Q. She told where she came from and who she was?

A. Yes, I asked her how she came to get off of the train and she told me her name was Baier and that she was from Nehawka, and she said the conductor had told her—had come into the car when they got to Weeping Water and told them to get out at Weeping Water and change cars for Lincoln. When the train stopped at the tank she supposed it was the place, and they got off, then the conductor told them it was not the station and they had better get back on the train and ride to the depot; she said she got on, but when she got on the steps the train pulled out and her husband and children had not got on the train, and then she said when the train stopped in front of the depot she supposed it was the place to get off; she got out of the car and got on the steps, but just as she was in the act of getting off the steps the train made a jerk and she fell off.

It was of the ruling upon a motion to strike out this evidence as to what Mrs. Baier said that complaint is made in argument of the plaintiff in error. It might not be improper to observe at this point that the testimony shows without question that Mrs. Baier was immediately, after the above detailed circumstance, taken to a vacant storeroom in the town of Weeping Water, and that there both

her legs were amputated, and that from the effects of the injury she died one week after the date of the accident, of which the last witness has testified.

From the above testimony it is apparent that the statements of Mrs. Baier were made immediately after she had received her injuries and before she had been removed from the place where she had sustained them, and were explanatory of the occurrence of the accident.

In the brief of the plaintiff in error is cited *Waldele v. New York C. & H. R. R. Co.*, 95 N. Y., 274, in which are grouped the holdings in several decisions bearing upon the question of evidence admissible as part of the *res gestæ*. In respect to those most analogous in facts the following language was used in said opinion, to-wit: "In *Lund v. Tyngsborough*, 9 Cush., 36, in view of the frequent recurrence of questions in regard to the admission of declarations claimed to be part of some *res gestæ*, the court undertook to set forth and illustrate with some particularity the principles and tests by which such questions must be determined, and among other things said : 'When the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence. The credit which the act or fact gives to the accompanying declarations as a part of the transaction, and the tendency of the contemporary declarations as a part of the transaction to explain the particular fact, distinguish this class of declarations from mere hearsay.' And further: 'Such a declaration derives credit and importance as forming a part of the transaction itself, and is included in the surrounding circumstances, which may always be given in evidence to the jury with the principal fact. There must be a main and principal fact or transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character, are

contemporary with it, and derive some degree of credit
from it.'"

In *Commonwealth v. Hackett*, 2 Allen [Mass.], 136, upon
a trial for murder, a witness testified that at the moment the
fatal stabs were given he heard the victim cry out "I am
stabbed," and he at once went to him and reached him
within twenty seconds after that and then heard him say,
"I am stabbed; I am gone; Dan Hackett has stabbed me."
This evidence was held competent as part of the *res gestæ*,
Bigelow, Ch. J., speaking of this ·evidence, said : "If.it
was a narrative statement, wholly unconnected with any
transaction or principal fact, it would be clearly inadmissi-
ble.   But such was not its character; it was uttered imme-
diately after the homicidal act, in the hearing of the person
who was present when the mortal stroke was given, who
heard the first words uttered by the deceased, and who went
to him after so brief an interval of time that the declara-
tion or exclamation of the deceased may fairly be deemed
a part of the same sentence as that which followed in-
stantly after the stab with the knife was inflicted.   It was
not, therefore, an abstract or narrative statement of a past
occurrence, depending for its force and effect solely.on the
credit of the deceased, unsupported by any principal fact,
and receiving no credit or significance from the accompany-
ing circumstances.   But it was an exclamation or state-
ment, contemporaneous with the same transaction, forming
a natural and material part of it, and competent as being
original evidence in the nature of *res gestæ*."

In *Rockwell v. Taylor*, 41 Conn., 55,.the rule was laid
down thus: "To make declarations admissible on this
.ground, they must not have been mere narratives of past
occurrences, but must have been made at the time of the act
done which they are supposed to characterize and have been
well calculated to unfold the nature and quality of the acts
they were intended to explain; and so harmonize with
them as to constitute a single transaction."

In *Hanover R. Co. v. Coyle*, 55 Pa. St., 396, the action was against the railroad company for injury to plaintiff by negligence, and the trial court admitted the declarations of the engineer, by whose negligence the plaintiff was injured, made at the time of the injury, as a part of the *res gestæ*, and it was held they were properly admitted. Agnew, J., writing the opinion, and speaking of the declaration of the engineer, said: "It was made at the time of the accident in view of goods strewn along the road by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations made upon the spot at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself."

In *Tilson v. Terwilliger*, 56 N. Y., 273, Folger, J., lays down the rule as to *res gestæ* declarations as follows: "To be a part of the *res gestæ* they must be made at the time of the act done which they are supposed to characterize; they must be calculated to unfold the nature and quality of the facts which they are intended to explain; they must so harmonize with those facts as to form one transaction. There must be a transaction of which they are considered a part; they must be concomitant with the principal act and so connected with it as to be regarded as the result and consequence of co-existing motives."

In *Chicago W. D. R. Co. v. Becker*, 128 Ill., on page 548, the rule is thus stated: "The true inquiry according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history or a part of a history of a completed past affair. In the one case it is competent, in the other it is not;" citing *Mayes v. State*, 64 Miss., 329; *Waldele v. New York C. & H. R. R. Co.*, 95 N. Y., 274; *Lander v. People*, 104 Ill., 248.

Greenleaf says: "The principal points of attention are whether the circumstances and declaration offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." (1 Greenleaf, Ev., sec. 108.)

Taylor says: "In all these cases the principal points of attention are whether the circumstances and declarations offered in proof were so connected with the main fact under consideration as to illustrate its character, to further its object, or to form, in conjunction with it, one continuous transaction." (1 Taylor, Evidence [7th ed.], sec. 588.) The same author, after speaking of the change in the old rule, where there are connecting circumstances, goes on to say: "Still an act cannot be varied, qualified, or explained either by a declaration which amounts to no more than a mere narrative of a past occurrence, or by an isolated conversation held or an isolated act done at a later period." There is not so much difficulty in the enunciation of the rule as in its application to the facts in each case under consideration. The consensus of the authorities seem to be, that a declaration to be a part of the *res gestæ* need not be coincident in point of time with the main fact proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue taken together from a continuous transaction, then the declaration is admissible. Applying these principles to the fact of the case at bar, there would seem to be no room for doubt that the declarations of Mrs. Baier, made under circumstances so nearly coincident in point of time with the accident itself, explanatory of its cause and history, were admissible as part of the *res gestæ*.

There appears in the bill of exceptions the following evi-

dence given by Oswald Baier, administrator, in whose name this action was brought:

Q. What was the condition of your wife's health that morning when you left Nehawka?

A. She was in good health.

Q. State what was her condition from the time she was injured up to the time of her death.

A. She had both legs amputated, and it caused her death.

(On motion of defendant the words "it caused her death" were stricken out.) * * *

Q. I will ask you what was the reasonable value of her work as housekeeper and the work she did?

Objected to, as incompetent, irrelevant, immaterial, and no proper foundation laid; no allegation in the petition of any damages of that character. Overruled. Exception.

A. I would not miss her for $25 a week for these children.

(On motion this answer was stricken out.)

Q. What I mean, what was the work she did there in the way of saving you from having to hire a girl to do the work; what was the actual value of the work that was performed by her?

Objected to, as incompetent, irrelevant, immaterial, and not within the issues in this case, and not a proper item of damages. Overruled. Exception.

A. I do not think I could get anybody to do the work for less than $5 per week, the work that she did.

The defendant moves to strike out the answer as not responsive to the question, incompetent, irrelevant, and immaterial, not within the issues in this case. Overruled. Exception.

It is argued that the court erred in admitting this evidence: First, because no special damages having been alleged specifically, none such could be proved; second, because the loss of services of the wife and mother was not

a proper element of damage to be considered in cases of this class.

The suit was brought by Oswald Baier as administrator of his deceased wife's estate. The petition alleged that Mrs. Baier left surviving her eight children, ranging from two to seventeen years of age, who were her only children and next of kin, and that said children were dependent upon her for a mother's care and attention, and that said children had been otherwise injured by the death of Katharine Baier to the amount of $5,000. This action was brought under chapter 21, Compiled Statutes of Nebraska, of which the following is a copy :

"Section 1. That whenever the death of a person shall be caused by the wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case the person who, or company or corporation which, would have been liable had death not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 2. That every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries, resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars; *Provided,* That every such action shall be commenced within two years after the death of such person."

The case specially relied upon by counsel for plaintiff in error to support the contention that damages must be specially alleged is *Hurst v. Detroit City R. Co.*, 48 N. W. Rep. [Mich.], 44. In that case the injuries resulting in death were inflicted upon a child of the age of one year and eleven months, and the only damages alleged were the pain, agony, and suffering endured by the said child in the interim of two hours between the injury and the death. This was under a statute much the same in terms as that above quoted, and the decision was not so much because of the failure to allege special damages, as to allege no pecuniary damages whatever to the next of kin.

Another case cited for the same purpose is *Pennsylvania Co. v. Lilly*, 73 Ind., 252, in which the victim was at the time of her death five years of age. The averment in the complaint was that "By reason of the said negligent, reckless, and willful killing of the said Emma, the plaintiff had been made to suffer great mental pain and anguish, had been deprived of the happiness and comfort of her society, and thereby has suffered great damage." It was held that the recovery by a parent for the death of his child could only be for the pecuniary damage he had sustained, the proper measure of which was the value of the child's services from the time of the injury until majority attained, taken in connection with such child's prospect of life, less the cost of support and maintenance. In a proper case a recovery could be had of the expenses for the care and maintenance of a child, funeral expenses, and medical services made necessary by the injury. This case was not merely one of a failure to properly allege special damages. It was one where no recoverable damages whatever had been stated.

To the same end counsel for plaintiff in error cites *Cooper v. Lake Shore & M. S. R. Co.*, 66 Mich., 261. For the purposes of the case under consideration, the seventh syllabus of the case cited states with sufficient fullness the

facts and views of the court.   This syllabus is as follows:
"In an action brought under How. Sts., sec. 8314, to re-
cover damages for the negligent killing of a child of eleven
years of age, the court instructed the jury that in assessing
damages they might allow for the value of the services
of the deceased to her parents until she arrived at the age of
twenty-one years, and might further take into consideration
such other pecuniary benefits as the parents might reasonably
be expected to realize had she lived for the balance of her
probable duration of life, not exceeding theirs, to the latter
portion of which charge exception was taken, defendant's
counsel insisting that the damages should be limited to the
minority of the child; *held*, that the exception was well
taken, and that any estimate or value placed upon events
so uncertain must be without any satisfactory basis to rest
upon." Notwithstanding this criticism the supreme court
of Michigan held in that case that as the jury might prop-
erly have found that the value of services which were prop-
erly recoverable were equal to or in excess of the verdict
($1,550) the judgment was affirmed.   At best, the quoted
syllabus is wholly directed rather against an indefinite in-
struction than a faulty pleading.

In *Regan, Admr., v. Chicago, M. & St. P. R. Co.,* 51
Wis., 599, there was a general averment of damages which
was properly held insufficient, for there should have been
alleged a state of facts from which pecuniary damages were
inferable.   The statute under which the case at bar was
brought made this requirement, so that the case last cited
aids but little in this inquiry.

In Ohio there is a statute almost exactly the same in
terms as chapter 21, Compiled Statutes of Nebraska.   Under
that statute it was held that a recovery might be had of an
amount which it might reasonably be expected that the
next of kin would have received from the deceased had he
lived, the expectancy of life being a proper subject of proof
to that end. (*Lyon's Admr. v. Cleveland & T. R. Co.,* 7

O. St., 336.)  The allegations of the petition upon which judgment was rendered in the case at bar more fully state the grounds of damages than was done under the same statute in *Lyon's Admr. v. Cleveland & T. R. Co., supra,* where the petition was set out at length.

In *Steele, Admr., v. Kurtz,* 28 O. St., 191, Ashburn, J., delivering the opinion of the court, said: "The phrase 'next of kin' is a comprehensive one.  Bouvier in defining it says: 'This term is used to signify the relations of a party who has died intestate.' 'In general, no one comes within this term who is not included in the provisions of the statutes of distribution,' etc.  As used in the statute it comprehends all those persons who are entitled to stand in the order of inheritance under the statute of distributions in the case of personalty—1, children; 2, husband or wife; 3, brothers and sisters, and so on."  Under the statute of Nebraska regulating the distribution of personalty the same persons would be entitled to shares of the personal property of the deceased as those above stated, though not in the same order.  (Comp. Stats., ch. 23, secs. 30 and 176.)

In *Wilson v. Bumstead,* 12 Neb., 1, it was held that an action should be brought by the administrator; MAXWELL, Ch. J., who delivered the opinion of the court, saying: "The object doubtless was to prevent a multiplicity of suits in cases where the next of kin were numerous, and to make an equitable distribution of the amount recovered among all those entitled to the same."

In *Johnson v. Missouri P. R. Co.,* 18 Neb., on pages 699 and 700, occurs the following language in reference to a recovery had under this statute: "If it should appear upon trial that the father suffered no damage in the death of the son, it is probable there could be a recovery only for nominal damages.  But it is said that the word 'pecuniary,' as used in our statute, is not construed in a strict sense.  The damages are largely prospective and their determination committed to the discretion of juries upon very

meager and uncertain data. A parent may recover for loss of expected services of children, not only during minority, but afterwards on evidence justifying a reasonable expectation of pecuniary benefit therefrom. Neither is it essential that this expectation of pecuniary benefit should be based on a legal or moral obligation on the part of the deceased to confer it, but it may be proved by any circumstances which render it probable that such benefit would in fact be realized."

Necessarily in the above review of authorities there could be no separate examination of the two points urged on behalf of the plaintiff in error on this branch of the case—first, of the necessity of more special pleading of damages, and, second, of the right to recover for loss of prospective services. Upon the last of these propositions, before a full examination of the authorities, the writer hereof at least entertained some doubts which have now been dispelled. The petition, especially in the absence of a motion to make more specific and certain, stated with sufficient particularity a cause of action under chapter 21, Compiled Statutes of Nebraska, to admit evidence of damages of the character above set out. It was competent under the averments of the petition to prove any facts which would show any pecuniary loss to the next of kin of the deceased, resulting from her death. There was no error therefore in admitting evidence of the value of the services of the deceased in connection as it was given with proof of her expectancy of life at the time she was injured.

In the instructions requested on behalf of the railroad company it was insisted that the court should instruct the jury that if they found the existence of certain facts as indicated by the instructions, their verdict should be for the railroad company. This the court very properly refused to do. The existence of negligence, whether as a cause of action pleaded by the plaintiff or as a defense set up by the defendant, is a question of fact to be submitted to the jury

for determination, as should be any other essential fact.
(*Atchison & N. R. Co. v. Bailey*, 11 Neb., 332; *Johnson
v. Missouri P. R. Co.*, 18 Id., 690; *City of Lincoln v.
Gillilan*, Id., 114; *Powers v. Craig*, 22 Id., 621; *Omaha
& R. V. R. Co. v. Chollette*, 33 Id., 143; *Stevens v. Howe*,
28 Id., 547; *City of Plattsmouth v. Mitchell*, 20 Id., 228;
*Huff v. Ames*, 16 Id., 139; *Union P. R. Co. v. Lee Sue*,
25 Id., 772; *Orleans Village v. Perry*, 24 Id., 831.) It is
doubtless proper for the court in any case to instruct the
jury that certain facts, if proved, may be considered in ar-
riving at conclusions upon the propositions involved, but
in no case should there be an effort to impress upon the
jury the convictions of the presiding judge as to the weight
of the evidence under consideration. To single out and
state a fact or group of facts and inform the jury that if
such is found to exist it establishes the existence of negli-
gence, is to comment improperly upon questions of fact to
the jury and the learned judge properly refused to lend
sanction to such procedure. For instance, the 40th in-
struction requested on behalf of the railroad company was
in the following language: "40th. If the jury believe from
the evidence that Katharine Baier attempted to get off after
the train was in motion in disregard of the warning of pas-
sengers not to do so, she was guilty of negligence and
plaintiff cannot recover herein." The theory of the rail-
road company upon the trial was, that, after the train left
the water tank where the conductor had directed Mrs.
Baier to resume her place in the car, it had not stopped at
all, but that Mrs. Baier, observing that she had been con-
veyed past the depot, and being apprehensive that she
would be carried to Omaha, alighted from the moving
train and so was injured. Upon this theory the above
instruction could have no other meaning than that. if
after the train left the water tank Mrs. Baier got off
in disregard of the warning of passengers, she was
guilty of negligence, regardless of whether or not there

was a halt such as she might well mistake for the stop according to her statement indicated by the conductor as the proper time for her to leave the train. Aside from this, the instruction requested gave a certain positive weight to the warning of the passengers to which such warning might or might not be entitled. If these passengers were agents of the railroad company in the management of its trains, they could of course speak with authority. They were not, however; they were in this matter mere volunteers, not necessarily presumed to possess better means of knowledge than Mrs. Baier herself, especially if, as she said, she had received directions from the conductor as to the course she was to pursue. The unfairness of such an instruction is apparent without comment; it is referred to simply as illustrative of the danger there is in attempting to state to the jury what fact or facts constitute negligence. The jury may with propriety be instructed that certain facts are proper for consideration in determining whether or not there has been negligence. Whether such facts as are in evidence establish negligence, is solely a question for the jury. If there is insufficient evidence to sustain a verdict, the remedy is as in other cases; no exceptional course of procedure should be adopted because the existence of negligence is involved in the facts to be determined.

The record shows that the plaintiff in error specially excepted to that portion of instruction number four, given by the court, which makes the defendant liable to passengers for damage sustained through accident, and to each and every other part of said instruction. The instruction complained of is as follows: "As a matter of law you are instructed that the defendant railroad company is bound to carry its passengers without injury, and that said company is liable for damages suffered by passengers through accident while upon its trains which is not contributed to by the gross negligence of the parties injured. By gross neg-

ligence, as used in the foregoing instruction, is meant such negligence on the part of a passenger as would amount to a disregard of his or her own safety when in the presence of danger, and which would amount to willful indifference to the injury liable to follow or result from such carelessness and negligence."

Section 3, article 1, chapter 72, Compiled Statutes, reads as follows: "Every railroad company as aforesaid shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the persons injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice."

In *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143, the following instruction was approved by this court: "The term 'criminal negligence,' as it is used in the statute above quoted, is defined to be gross negligence. It is such negligence as would amount to a flagrant and reckless disregard of her own safety and amount to a willful indifference to the injury liable to follow." In his definition of the term "criminal negligence" the district judge in the case at bar only followed that adopted by this court. Counsel for plaintiff in error insist, however, that a rigid application of the terms of the above statutory provision was discountenanced in the opinion written by MAXWELL, J., in *McClary v. Sioux City & P. R. Co.*, 3 Neb., 44. That case was brought to recover damages caused by a sudden gust of wind blowing from the track the train upon which plaintiff was riding, the theory of plaintiff being that if the train had run on its schedule time it would have safely crossed the narrow strip devastated before the wind struck that part of the track where the wreck occurred. In the opinion it was properly said therefore that "Common carriers are liable only where the injury has arisen from their own neglect," and as it was shown affirmatively and without question

Missouri P. R. Co. v. Baier.

that the company was entirely free from responsibility for the injury, it was held not liable in damages. The purpose of the statute was not to fasten upon a common carrier of passengers a liability as insurers against any and all injuries while being transported upon the trains of such carriers, but it was rather intended to establish a presumption from the passenger receiving injury under the circumstances contemplated. Under this statute it is necessary to prove only that the injured person was a passenger being transported over the line of railroad of the defendant when damages are inflicted upon the person of such passenger, to entitle a recovery of whatever amount of damages may be established by the evidence. In other words, these facts being shown, any damage resulting from the operation or management of the train, is, without more, presumed to be entirely attributable to the negligence of the railroad company, and to avoid liability it then devolves upon such company to show that the injury was imputable to the criminal negligence of the party injured, or to his violation of some express rule or regulation of said road actually brought to his or her notice. As applied to the facts of this case, the 4th instruction given by the court fairly stated the correct rule as embodied in the section of the statute above quoted, and the assignment of error predicated upon the giving of that instruction must therefore fail.

These considerations of the 40th instruction requested by the plaintiff in error, and of the 4th instruction given by the court, fully meet the contentions urged against the instructions given, as well as upon those refused, so that a more extended examination of either class is rendered unnecessary.

The judgment of the district court is

AFFIRMED.

THE other commissioners concur.