BEN B. WOOD REALTY COMPANY, APPELLANT, V. BEN BROWN WOOD ET AL., APPPLLEES.

273 N. W. 493

FILED MAY 21, 1937. No. 29940.

*George B. Thummel,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *Winthrop B. Lane, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CLEMENTS, District Judge.

ROSE, J.

This is a suit in equity brought in the corporate name of Ben B. Wood Realty Company, plaintiff, to foreclose alleged liens of that corporation on 249 shares of its capital stock which had been issued to Ben B. Wood, now deceased. E. B. Crofoot, administrator of the estate, is one of the defendants. The indebtedness of Ben B. Wood to plaintiff was evidenced by two unpaid promissory notes, one for $3,062, dated April 1, 1915, and the other for $6,775, dated March 28, 1930. Other defendants are the Merchants National Bank of Omaha, a creditor of Ben B. Wood in the sum of $5,021.62, and Ben Brown Wood and Truman S. Wood, decedent's minor sons, who are represented by Winthrop B. Lane, guardian *ad litem.*

The petition alleges in substance, among other things, that, in 1904, the husband of Daisy B. Wood died, leaving her, in trust as her life estate, the income from his property and dividing the estate in remainder equally among their four children, LeRoy, Margaret Wood Cranmer, Ben B., and Robert; that, in 1911, when the widow was embarrassed by debts, she and her four children, in consideration of the release of her life estate, of provision for her future support and of payment of her debts, dissolved the trust created by her husband and incorporated the Ben B.

Wood Realty Company, plaintiff, to carry out the new arrangement; that the amount of the capital stock was $100,-000 and one-fourth of it was issued to each of the four children; that, for corporate purposes, in exchange for nonnegotiable receipts, the stock was deposited with Harry B. Cranmer, husband of the daughter, Margaret, as trustee under what was called a "voting agreement;" that the corporation, plaintiff, lent Ben B. Wood $3,062, as evidenced by his note, and accepted as security therefor a written assignment of his stock receipt; that he had no property except his interest in his stock and was insolvent; that the note and assignment have been kept in plaintiff's possession; that the corporation had devoted both earnings and part of its capital to the support of the widow; that Ben B. Wood, while a corporate officer, wrongfully appropriated to his own use $6,775 belonging to the corporation, gave his note therefor to restore the shortage and secured it by an oral pledge of his stock receipt. The facts are pleaded in detail and the written instruments upon which plaintiff relies are made parts of the petition. The validity of the assignment of the stock receipt and of the oral pledge to plaintiff were put in issue by various pleadings of the parties to the suit.

Upon a trial of the cause, the district court decreed a first lien on Ben B. Wood's interest in 249 shares of stock to secure payment of the 3,062-dollar note and directed plaintiff to apply in satisfaction of the debt sufficient earnings of such stock and any declared dividends thereon. Of this part of the decision no complaint is now made. The decree below, however, denied plaintiff any relief on the alleged oral pledge of the same stock receipt to secure the note for $6,775, and this ruling is challenged as erroneous in an appeal by plaintiff.

There is no material conflict in the evidence. The burden was on plaintiff to prove the oral pledge. A statute giving a corporation a lien on corporate stock to secure a debt of a stockholder has not been pointed out or found. To prove an oral pledge of stock, the evidence must clearly show

both parties intended to create a lien of that kind. 49 C. J. 904. Such a contract of pledge is limited to the particular debt secured. *Sharmer v. McIntosh*, 43 Neb. 509, 61 N. W. 727. A written assignment to secure one debt does not include a subsequently created debt owing by pledgor to pledgee, in absence of a contract to that effect. The debt evidenced by the second note was not in existence or contemplated when the first note was executed and when the written assignment of the stock receipt was made. Possession of the stock and of the assignment of the stock receipt was obtained by plaintiff for the purposes of a trust long before the note for the shortage was given. The substance of the testimony as to what Ben B. Wood said he could do about the shortage and restitution is as follows: Cannot do anything; company already has first note and stock; all that can be done is to give another note; sorry he took the money; intended to pay it back from his share of the estate; only way he could repay it would be through his stock, unless he could make enough to take care of it; owed plaintiff approximately $10,000 and intended to make it good from his stock.

The testimony outlined, as indicating intention, added little or nothing to the promissory note for the shortage, except the contemplated means of payment. Ben B. Wood did not sign a written pledge of stock to secure the shortage or say he intended to leave the stock in possession of the corporation as security—natural steps, if he so intended. His mother was 82 years of age and his intention to pay his shortage with funds arising from liquidation of the corporation upon expiration of the trust in her favor by her death was at least reasonable as an inference of an unexpressed intention to make a contract of pledge in which plaintiff joined. When all the evidence and surrounding circumstances are considered, the intention of Ben B. Wood to pledge his stock to secure his shortage is not clearly shown. Plaintiff did not maintain the burden of proof on this issue and the trial court did not err in so holding.

The appeal presents also the asserted right of plaintiff to set off the shortage of Ben B. Wood against his distributive share of the assets of plaintiff. That corporation has not yet fully executed the trust to support the widow for life and is not in the course of liquidation. The statute provides:

"A set-off can only be pleaded in an action founded on contract, and must be a cause of action arising upon contract, or ascertained by the decision of the court." Comp. St. 1929, sec. 20-816.

A rule in this branch of the law has been stated as follows:

"Mutuality of demands is necessary to entitle a defendant to a set-off, and the respective demands must be between the same persons and in the same capacity." *Bank of Crab Orchard v. Myers,* 120 Neb. 84, 231 N. W. 513.

In the present case there is no mutuality of claims. The record does not disclose any present enforceable claim of the estate of Ben B. Wood, deceased, against plaintiff. His stock is impressed with a trust for the support of his mother. There are now no dividends or assets available for a set-off. It follows that the set-off was properly disallowed.

Another issue earnestly presented on appeal is the pleaded right of plaintiff to a declaratory judgment that it is authorized by the contracts of the widow and her four children to use both income and capital for her support during her life. The district court properly declined to rule on this question. Some of the interested parties to these contracts were not made parties to this action and are not before the court. It is well-settled law that the statute authorizing a declaratory judgment is applicable only where all interested persons are made parties to the proceeding. Comp. St. 1929, sec. 20-21,145; *Southern Nebraska Power Co. v. Village of Deshler,* 130 Neb. 133, 264 N. W. 462; *Smithberger v. Banning,* 130 Neb. 354, 265 N. W. 10; *Arlington Oil Co. v. Hall,* 130 Neb. 674, 266 N. W. 583.

The district court allowed and taxed against plaintiff a

fee of $150 for the services of the guardian *ad litem* and this order is also attacked as erroneous without complaint of the amount. The guardian was appointed by the court as its officer to assert and protect the rights of the minors. His services were necessary and well performed. Plaintiff subjected the minors to the burdens of litigation and most of the relief sought was properly denied. The statute provides:

"It shall be the duty of every attorney to act as the guardian of an infant defendant in any suit pending against him, when appointed for that purpose by an order of the court; he shall prepare himself to make the proper defense, to guard the rights of such defendant, and shall be entitled to such compensation as the court shall deem reasonable." Comp. St. 1929, sec. 7-113.

The litigant to whom the fee for services of a guardian *ad litem* shall be taxed as costs depends upon the circumstances of each particular case and the discretion of the court. *Shelby v. Meikle,* 62 Neb. 10, 86 N. W. 939; *Bailey v. Garrison,* 68 Neb. 779, 94 N. W. 990. The circumstances justify the fee as allowed and taxed. An additional fee of $100 will be taxed against plaintiff for services of the guardian *ad litem* in the supreme court. Error prejudicial to plaintiff has not been found in the proceedings and judgment below.

AFFIRMED.