MARGARET A. PETERSON, A MINOR, BY HELEN PETERSON, NEXT FRIEND, APPELLANT AND CROSS-APPELLEE, V. ALLEN C. SKILES ET AL., APPELLEES AND CROSS-APPELLEES, ROBERT SCHROEDER, APPELLEE AND CROSS-APPELLANT.

113 N. W. 2d 628

Filed March 9, 1962. No. 35127.

*Dier & Barton* and *Raun & Samuelson,* for appellant.

*Anderson, Storms & Anderson, Luebs, Elson & Tracy,* and *Richard A. Huebner,* for appellees Skiles.

*Munro, Parker & Munro,* for appellee Robert Schroeder.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action for damages for personal injuries resulting from an automobile accident. The trial court directed a verdict in favor of the defendants Robert Schroeder and Edward Schroeder. The jury returned a verdict in favor of the defendant Allen C. Skiles. Motions for a new trial were filed and overruled by the court. Plaintiff has perfected her appeal to this court.

The parties to this litigation and the primary witnesses at the trial attended a wedding at Riverdale, Nebraska, on June 7, 1959. Upon the departure of the bride

and groom from Riverdale by automobile following the wedding, a pursuit was undertaken in three automobiles. Immediately prior to the accident the car carrying the newly-weds was proceeding east on a graveled highway east of Riverdale. They were being pursued in the following order by the automobile driven by the defendant Robert Schroeder with Gerald A. Knapp as a passenger, the automobile driven by the defendant Allen C. Skiles with Barbara Miller as a passenger, and the automobile driven by Annette Henderson who was accompanied by Ann Chandler and Margaret Peterson. The action was commenced by Helen Peterson as next friend of Margaret Peterson, a minor. We shall refer to Margaret Peterson as plaintiff.

The road was graveled and 24 or 25 feet wide at the scene of the accident. The day was clear with some dust rising and blowing off the road. At approximately 4:15 p.m., as Schroeder drove over a small hill, he observed indications that a tire on his car was going flat. He coasted down the east side of the hill, pulled over to the right side, and stopped. The evidence is that he stopped with his right wheels over the south shoulder of the road and his left wheels against a small ridge of gravel at the edge of the highway. He and other witnesses testified that his automobile occupied about 2 feet of the graveled portion of the road. Skiles came over the hill and stopped alongside the Schroeder car about 2 feet from it. Some conversation occurred between the occupants of the two cars for a half minute or so when the automobile of Annette Henderson came over the hill, angled to the left, went into the north ditch a short distance to the rear of the Skiles car, ran down the ditch a short distance, struck the north bank of the north ditch, and rolled over one or more times, causing the injuries to Margaret Peterson for which the action was brought.

The evidence of Schroeder, Skiles, and Knapp is that the Henderson car came over the hill at a speed of 70

or more miles per hour, that it appeared to "rare up" as it came over the crest of the hill, and that the brakes were applied, causing its wheels to lock and skid to the left until the car went into the ditch on the left side of the road. These three witnesses testified that the Skiles car was on the right of the center of the road and that the Henderson car had more than 15 feet to the north of the Skiles car in which to pass. The Henderson car left skid marks on the road for 132 feet before it went into the north ditch. The distance from the point where the Henderson car left the road to the place where it came to rest was 141 feet.

Annette Henderson, the driver of the Henderson car, testified that she came over the hill and saw the two cars stopped side by side, that they seemed only a car-length in front of her, that she did not have room to get around them on the road, and that she drove her car into the ditch to avoid a collision with the two cars. She could give no estimate of her speed as she came over the hill. She did not know that the Schroeder and Skiles cars were ahead of her as she traveled east before the accident. The state patrolman who investigated the accident testified that he interviewed Annette Henderson the day after the accident and that she said she was driving between 65 and 70 miles per hour when she went over the crest of the hill.

Margaret Peterson testified that she was riding in the Henderson car. She was sitting between the driver, Annette Henderson, and Ann Chandler. She saw the two cars parked side by side part way down the hill. She said the Schroeder car was partly on the gravel road and the Skiles car 2 or 3 feet to the north of it. She estimated the speed of the Henderson car at 50 to 60 miles per hour as it came over the hill. She remembers the Henderson car going toward the ditch and remembers nothing that occurred thereafter. It is not disputed that Margaret Peterson suffered serious injuries in this accident.

The distance of the two cars as they stood on the road from the crest of the hill is in dispute. Knapp testified the Schroeder and Skiles cars stopped from 75 to 100 yards from the crest of the hill. Barbara Miller and Skiles estimated it as the same distance. Curtis Henderson, father of Annette Henderson, testified that he stepped the distance from the crest of the hill to a point fixed by Schroeder as the place where the cars stopped and found it to be 141 feet. Schroeder testified that he stopped across from a corner post in the south fence, a distance of 285 feet from the crest of the hill.

The applicable statute dealing with the parking or leaving of vehicles standing on a highway provides in part as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; * * *. The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position." § 39-757, R. R. S. 1943.

It is the contention of the plaintiff that the trial court erred in directing a verdict in favor of the defendants Robert Schroeder and Edward Schroeder in view of the foregoing statutory provision. The evidence shows without dispute that the automobile operated by Robert Schroeder had a tire going flat as it went over the hill at the scene of the accident. He coasted down the hill and stopped, pulling his right wheels into the ditch and leaving his left wheels no more than 2 feet on the road. No other act of negligence is charged against him.

We think an automobile with a flat tire is a disabled automobile within the meaning of this statute. The

driving of an automobile in such condition is not safe. It could result in further damage to the car. A rule of reason requires the operator of such an automobile to take all reasonable precautions to protect the traveling public, but to bring it to a stop at a point reasonably safe under the circumstances is not a violation of the statute per se when it is not practical to remove it entirely from the road.

In LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902, this court quoted the following with approval from Grubbs v. Grayson, 165 Wash. 548, 5 P. 2d 1033: "The statutes are not violated if there is proper excuse or a necessity for stopping an automobile upon the highway, and a reasonable effort is made to get it entirely off the traveled portion of the road or as nearly so as circumstances will permit." The stopping of an automobile on a public highway to make necessary repairs is not a violation of section 39-757, R. R. S. 1943, as a matter of law. An automobile with a flat tire is disabled within the meaning of that section of the statute and if a reasonable effort is made to get it off the traveled portion of the highway, the statute is not violated. Whether or not a reasonable excuse for stopping existed and a reasonable effort made to remove the disabled automobile from the traveled portion of the highway, and reasonable precautions taken for the protection of highway traffic, is ordinarily a question for the jury. In the instant case, however, the acts of Schroeder in this respect are not in dispute. When his tire went down he turned his car to the right with its right wheels off the shoulder and his left wheels occupying approximately 2 feet of the 25-foot road. There was admittedly more than 15 feet of road for traffic to pass. It is clear that he acted reasonably under the circumstances shown. He was not in violation of the statute and he was guilty of no actionable negligence under the facts shown by the record. There is no evidence that he could have stopped his car off the road within a reasonable distance from the point

where he did stop it. The trial court, therefore, properly sustained the motion for a directed verdict as to Robert Schroeder and Edward Schroeder, the latter's purported liability being imputed under the family purpose doctrine.

The trial court submitted the issue of negligence as between plaintiff and Skiles to the jury. The trial court properly instructed the jury that any negligence on the part of Annette Henderson, the host driver, was not imputable to the plaintiff. The jury was also properly instructed that Skiles would be liable to plaintiff for all damages if his negligence was a contributing cause of the accident irrespective of any negligence on the part of Annette Henderson. The court also informed the jury that liability would not attach to Skiles if the negligence of Annette Henderson was the sole proximate cause of the accident.

The trial court instructed the jury as to the applicable statutory law as follows: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. The following speed shall be prima facie lawful, but in any case when such speed would be unsafe, it shall not be lawful: fifty miles per hour upon any gravel, dirt, or other highway or road that is not hard-surfaced, except upon any highway that is a part of the state highway system outside of a city or village. The fact that the speed of a vehicle is lower than the foregoing prima facie limit shall not relieve the driver from the duty to decrease speed when approaching a hill crest.

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the improved or main traveled portion of any highway outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the improved or main traveled portion of such highway. In no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a

clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway.

"No person shall stop a vehicle beside any vehicle on the roadway."

The evidence is clear that Skiles violated the statutes of this state when he stopped his car beside the Schroeder car. It was clearly practicable for Skiles to have stopped his automobile, which was not disabled, off the main traveled portion of the road. The violation was evidence of negligence which the jury could consider, and the jury was so instructed. We cannot assume that the jury ignored the plain statutory provisions with reference to the use of the road. After a consideration of all the evidence the jury found that Skiles was either not negligent, or that his negligence was not the proximate cause or a concurring proximate cause of the accident. This was the province of the jury under the instructions given by the court.

The evidence shows that Annette Henderson drove her automobile over the hill at an excessive rate of speed. It is not disputed in the evidence that she was driving in excess of the maximum speed of 50 miles per hour fixed by statute. There is no evidence that she reduced her speed as she approached the crest of the hill, as the law requires. There is evidence that she came over the hill as fast as 70 or 80 miles per hour. There is evidence that the front of the car "rared up" as it came over the crest of the hill. There is some evidence that as she came over the hill she threw up her hands from the steering wheel, although she said she had her hands on the wheel at all times. She said the two cars appeared to be a car-length or less from her as she came over the hill, a fact disproved by many witnesses and the physical facts. The record shows that she applied

her brakes and left skid marks on the road for 132 feet before going into the north ditch. Her car proceeded down the ditch, struck the north bank, and rolled over one or more times within a distance of 141 feet from the point where it entered the ditch. She testified that there was no room to pass the Skiles car on the road and that she drove into the ditch to avoid hitting the Skiles car. Plaintiff corroborated her testimony in this respect. There is evidence that there was ample room for her to have passed the Skiles car on the road if she had had control of her car. Under the evidence in this record the jury could have properly found that Annette Henderson failed to reduce her speed as she approached the crest of the hill, that she came over the crest of the hill at high and excessive rate of speed, that she panicked and lost control of her car, that she was not driving in such a manner that she could stop in the range of her vision, and that her negligence was the sole proximate cause of the accident.

The issue was clearly one for the jury, which it resolved in favor of the defendant Skiles. The evidence was clearly sufficient to sustain the verdict of the jury. In fact, the state of the record is such that we doubt if any fair-minded jury could arrive at any other conclusion.

The plaintiff contends that the trial court improperly instructed the jury, with the result that she did not have a fair trial. The plaintiff contends that instruction No. 14 is erroneous in that it told the jury that section 39-757, R. R. S. 1943, did not prohibit momentary stops on the main traveled portion of a highway for a normal and reasonable purpose, - that momentary stops are incidental to the use of the highway. The question was determined by this court in Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669. The instruction given is consistent with the rule in that case. Under the holding in that case the terms "park" and "leave standing" do not include mo-

mentary stops incident to travel on a highway. It must be borne in mind that the violation of a statute is evidence of negligence only which the jury may consider in determining questions of negligence. Such violations do not have the effect of changing the general rules of negligence, but they constitute evidence of negligence which a jury may consider in determining questions of negligence under applicable rules. We find no error in instruction No. 14.

Plaintiff complains of instruction No. 15 in that, according to plaintiff, it singles out and states a group of facts and informs the jury that, if such facts are found to exist, negligence is established. A jury may be instructed that certain facts are proper to be considered in determining whether or not there has been negligence, but whether or not such facts as are in evidence establish negligence is solely for the jury. Missouri P. Ry. Co. v. Baier, 37 Neb. 235, 55 N. W. 913; Chicago, B. & Q. R.R. Co. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920. While the holdings of these cases are correct, the instruction being considered is not subject to the criticism directed to it. The instruction is not so drawn as to amount to an improper comment by the court upon the evidence. It states rules that are applicable to the evidence adduced and, they being correct, prejudicial error is not present. No attempt was made to recite the facts in the case. The relation of the rules to the facts shown in the evidence was left to the jury where the function belonged. We find no prejudicial error in the giving of instruction No. 15.

We have examined all the instructions given in the case, and the objections thereto, and we find that considered together they fairly submit the issues to the jury. We find no merit in the assignments of error dealing with the instructions.

Complaint is made of the refusal of the trial court to receive exhibit 3 in evidence. Exhibit 3 is a photograph taken at the scene of the accident a few days

after its occurrence. The conditions shown by the photograph were testified to by witnesses and do not appear to be in dispute. The admission or rejection of photographs in evidence is largely within the discretion of the trial court. In the absence of a showing of an abuse of discretion, error may not be predicated upon such ruling. Markey v. Hunter, 170 Neb. 472, 103 N. W. 2d 221; Zancanella v. Omaha & C. B. St. Ry. Co., 93 Neb. 774, 142 N. W. 190. No abuse of discretion is shown.

Plaintiff complains of misconduct on the part of ·a juror in that she failed to properly answer a question put to the entire panel. It is the contention of plaintiff that the jury panel was asked on voir dire examination if they or any members of their families had ever been in an automobile accident and had been sued with reference thereto, and on a request for a show of hands the prospective juror failed to raise her hand. The evidence shows that the prospective juror's husband had been in an automobile accident and had been sued as a result thereof. She was retained as a juror. The juror in question testified that she was asked if she had been in an automobile accident and whether or not she or any member of her immediate family had a suit pending as a result of an automobile accident. Since her husband's case was closed, she did not raise her hand in answer to this question. There was evidence that the claimed question was asked. The questions and answers on voir dire examination were not reduced to writing.

In such a situation the question as to whether or not the complaining party was prejudiced by the juror's failure to answer properly is a matter primarily within the discretion of the trial court. In the absence of a showing of an abuse of discretion the ruling of the trial court thereon will not be reversed. See Annotation, 63 A. L. R. 2d § 2, p. 1062. See, also, Dischner v. Loup River Public Power Dist., 147 Neb. 949, 25 N. W. 2d 813; Graves v.

Bednar, 171 Neb. 499, 107 N. W. 2d 12. No presumption of prejudice arises because the juror's husband was at one time involved in a suit arising out of an automobile accident. We find nothing to indicate that the trial court abused his discretion in overruling plaintiff's claim of misconduct on the part of the juror in question.

The defendant Robert Schroeder has cross-appealed. He assigns as error the denial of a fee to the guardian ad litem. The record shows that after service of summons upon Robert Schroeder he applied to the court for the appointment of a guardian ad litem for the reason that he was a minor 17 years of age. The court appointed Robert A. Munro as guardian ad litem. Subsequent to the trial of the case the guardian ad litem applied to the court for compensation to be taxed as costs in the action. The application was denied.

The defense of an infant must be by a guardian for the suit, who may be appointed by the court in which the action is prosecuted. § 25-309, R. R. S. 1943. It is the duty of an attorney to act as the guardian of an infant defendant in any suit pending against him when appointed by the court to do so. He is entitled to such compensation for such service as the court shall deem reasonable. § 7-113, R. R. S. 1943; Wood Realty Co. v. Wood, 132 Neb. 817, 273 N. W. 493; Copple v. Bowlin, 172 Neb. 467, 110 N. W. 2d 117. The guardian or next friend is liable for the costs of an action brought by him. § 25-308, R. R. S. 1943. An action by an infant must be brought by his guardian or next friend, who alone is liable for costs. The infant is not liable to a judgment for costs. Kleffel v. Bullock, 8 Neb. 336, 1 N. W. 250. The courts of this state are authorized by statute to tax as costs a reasonable fee for the services of a guardian ad litem. The litigant to whom the fee for services of a guardian ad litem shall be taxed as costs depends upon the circumstances of each particular case and the discretion of the court. Wood Realty Co. v. Wood, *supra.* An attorney acting under appointment as a guardian

ad litem must look only to the court for the amount of his compensation, to be taxed as a part of the costs of the proceedings and collected as such. Englebert v. Troxell, 40 Neb. 195, 58 N. W. 852, 42 Am. S. R. 665, 26 L. R. A. 177; Shelby v. Meikle, 62 Neb. 10, 86 N. W. 939.

In the instant case the action was commenced by Helen Peterson as the next friend of Margaret Peterson, a minor. Margaret Peterson is not liable for the costs of the unsuccessful litigation. Kleffel v. Bullock, *supra*. By statute, one who as next friend brings an unsuccessful suit on behalf of an infant is chargeable with the costs. § 25-308, R. R. S. 1943.

The trial court was in error in not fixing reasonable compensation for the guardian ad litem and taxing it as costs to Helen Peterson, the next friend, who brought the action.

The action of the trial court in directing a verdict in favor of defendants Robert Schroeder and Edward Schroeder is affirmed. The action of the trial court in entering a judgment on the verdict of the jury for the defendant Allen Skiles is affirmed. The judgment of the trial court denying the application of the guardian ad litem for compensation for services rendered is reversed and that portion of the case is remanded with directions to fix the compensation of the guardian ad litem, to be taxed as costs to Helen Peterson as the next friend of Margaret Peterson. The costs of this appeal, including compensation for the guardian ad litem in the amount of $100, are taxed to the plaintiff Helen Peterson.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.