BENJAMIN SPIELMAN, PLAINTIFF IN ERROR, V. THOMAS FLYNN, DEFENDANT IN ERROR.

1.  Justice of the Peace:  JURISDICTION.   Where the amount claimed does not exceed $200, and where an action is brought against a sheriff for the value of property sold by him under an execution in his hands, and there is no charge of misconduct, a justice of the peace has jurisdiction.

2.  Trial:  EVIDENCE:  STENOGRAPHER'S RECORD.   A certified copy of the stenographic reporter's record of proceedings in the district court is admissible in all cases where the original would be; and where the parties stipulate that the evidence of a witness on a former trial may be used instead of taking his deposition the stipulation should be enforced.

3.  ———:  ———:  STATUTORY CONSTRUCTION.  Sec. 394 of the code for the inspection of books, papers, or documents in the hands of the adverse party, does not apply to *copies* of a public record open to the inspection of both parties; and a copy of which may be obtained by either or both parties upon payment of the necessary fees.

4.  Continuance.   Where material testimony is suppressed, without which the party in whose favor it was taken cannot safely proceed to trial, the court, upon the application of such party and upon such terms as may be just, should grant a continuance.

ERROR to the district court for Platte county.   Heard below before TIFFANY, J., sitting for POST, J.

*McAllister Brothers*, for plaintiff in error.

*M. Whitmoyer* and *J. J. Sullivan*, for defendant in error.

MAXWELL, CH. J.

This action was brought before a justice of the peace of
Platte county by Thomas Flynn against Benjamin Spiel-
man, David Anderson, Joseph Schmitz, Peter Zibach, Geo.
Berney, W. D. Davis, Henry Ahrens, Gerhart Loseke, and
Charles Medaedel to recover the value of fourteen calves,
which it is alleged Spielman, as sheriff of Platte county,
levied upon and sold.   The cause was removed under the
statute to the county court of Platte county, the names of
the sureties being stricken from the bill of particulars.   A
trial was had in the county court from which an appeal
was taken to the district court.

The petition filed in the district court is as follows:

" Plaintiff complains of defendant, and alleges that said
defendant, on the 14th day of December, 1881, unlawfully
and forcibly took from the premises of plaintiff and forci-
bly and unlawfully carried away fourteen (14) yearling
calves of the value of fifteen dollars ($15) each, the prop-
erty of plaintiff, and still unlawfully detains the same—to
the damage of the plaintiff in the sum of one hundred and
ninety dollars ($190), for which sum plaintiff prays judg-
ment with interest," etc.

Spielman in his answer states in substance that at the
time indicated he was sheriff of Platte county; that at the
September term of the district court of said county one
Peter Klinchi recovered a judgment against one Michael
O'Hearn for the sum of $900, and costs; that on the 23d
day of December, 1881, said judgment being in full force
and effect the clerk of said court issued an execution thereon
directed to said Spielman as sheriff; that on said day said
Flynn " pretended to purchase said calves from said Michael
O'Hearn, and did take possession of said calves and remove
them from the custody and possession of said Michael
O'Hearn, under and by virtue of a fraudulent and corrupt

conspiracy with said Michael O'Hearn to hinder, delay, and defeat the collection of said execution," and that "acting as such sheriff he levied upon and sold said calves."

Flynn in his reply admits that Spielman was sheriff and was acting under an execution as alleged, "admits that one Peter Klinchi recovered a judgment against O'Hearn, and that at said time said judgment *was not satisfied*," "admits that at the time said calves were seized by said defendant they were in his possession, and denies each and every other allegation of the said answer."

The issues made by the pleadings have been stated, because to some extent at least they seem to have been lost sight of in the trial of the case, and as an answer to the first objection of the plaintiff in error that the action is brought to recover for the misconduct of an officer in office, of which a justice of the peace would not have jurisdiction.

An examination of the petition will show that the action is for the conversion of the property—for its value, and not for misconduct. In this regard the action is substantially like that of *Miller v. Roby*, 9 Neb., 471, and *Neihardt v. Kilmer*, 12 Id., 35. In the latter case it is said in the syllabus that a justice of the peace has jurisdiction of an action for the taking and converting of personal chattels of the value of two hundred dollars or under, and is not ousted of such jurisdiction by pleading and proof that defendant took such chattels by virtue of an execution, he being the sheriff. These cases are decisive of this question and the first objection is not sustained.

2d.   That the court erred in suppressing the testimony of Spielman. The record contains the following stipulation:

"THOMAS FLYNN,
          v.              } Stipulation.
BENJAMIN SPIELMAN.

"It is hereby stipulated and agreed by the parties hereto that the evidence of Benjamin Spielman so given on the

trial of this case, in March, 1883, may be used and given in the next trial of this case as his testimony, provided that he is not present or within the jurisdiction of the court at the time of trial, July 20, 1883."

This stipulation was signed by the attorneys for both parties. It appears that the attorneys for the defendant below had procured from the court reporter a copy of the testimony of Spielman on the former trial; that on the day of trial the attorneys for the plaintiff below asked for an order to permit them to inspect such testimony. The record shows that, " thereupon it was ordered that counsel for defendant submit said evidence to the inspection of plantiff's counsel immediately, and that on failure so to do said evidence be excluded from the jury on the trial of this cause." The order also recites that " this motion was first made on the day of trial and after the case was called for trial." The order does not seem to have been complied with, and when the attorneys for the defendant below offered a certified copy of the testimony of Spielman in evidence, it was objected to for the following reasons: *First*, Because of the refusal of the attorneys for Spielman to permit an inspection of the testimony. *Second*, Because there is nothing to show that " this is the evidence of Benjamin Spielman on the former trial of this case." *Third*, There is nothing to show that this is all the evidence given by Spielman on the former trial. *Fourth*, That there is no certificate or anything else to show that this is a true and correct copy of the testimony of Spielman. These objections were sustained, and the testimony excluded. The certificate is as follows: "This is all of the testimony of Benjamin Spielman. Sig. E. M. Battes court reporter, copied by M. E. Wheeler," the court reporter at the time of the trial. This certificate although not very formal is sufficient *prima facie* to show a correct copy of all of Spielman's testimony.

The present act to provide stenographic reporters for the district courts was passed in 1877, and is substantially em-

bodied. in chapter 19, Comp. Statutes, section 47 of which provides that "the said reporter shall attend all terms of the district court held within and for the district for which he is appointed, and shall make a stenographic report of all oral proceedings had in such court, including the testimony of witnesses, with the questions to them, verbatim, any further proceedings or matter when directed by the presiding judge so to do."

Sec. 48 provides that "said reporter shall keep and maintain an office within the district for which he shall be appointed, and shall keep and preserve in his said office all stenographic reports made by him as in this subdivision required. Such records shall be the property of the state, and upon the termination of his office the said reporter shall deliver the same to his successor in office."

Sec. 49 makes it "the duty of such reporter to furnish on the application of the district attorney, or any party to a suit in which a stenographic record of proceedings has been made, a long-hand copy of the proceedings so recorded, or any part thereof, for which he shall be entitled to receive, in addition to his salary, a fee of five cents per hundred words, to be paid by the party requesting the same," etc.

It will be observed that the statute makes the office a public one, and requires it to be kept in the district where the reporter is exercising the duties of his office; that the reports themselves are designated records and declared to belong to the state, and it is made the duty of the reporter to furnish a long-hand copy of the proceedings in a suit or any part thereof to any party to the action. From the necessity of the case such transcripts must be certified.

Sec. 408 of the code provides that "duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed."

This section, no doubt, applies to the records of evidence kept in pursuance of law by a court reporter, and the copy would be admissible in all cases where it would be proper to use the original.

Chapter 74 of the Comp. Stat., authorizes all persons interested in the examination of public records to make such examination free of charge during the hours the respective offices are kept open. The original was open to the inspection of either party, and either or both upon payment of the necessary expenses could have procured a copy. There was no reason, therefore, for demanding before the copy was offered in evidence an inspection of the same, or for the court to make a compliance with such order a condition of offering the copy in evidence. Had the original record been lost or destroyed the rule no doubt would be different, because then the copy would perhaps be the best evidence of what the original was.

Sec. 394 of the code provides that " either party or his attorney may demand of the adverse party an inspection and copy, or permission to take a copy of a book, paper, or document in his possession or under his control containing evidence relating to the merits of the action or defense." It is pretty clear that this section relates to books, papers, or instruments where the originals, or at least the exclusive copies, are in possession of the adverse party, and does not refer to public records open to the inspection of either.

The question is very fully discussed in 2 Phillips on Evidence (4 Am. Ed.), pages 304–336, and although our statute has enlarged the rule somewhat, the writer has been unable to find a single case to sustain the ruling of the court below. The court therefore erred in its order, and under the stipulation of the parties, in excluding the testimony of Spielman.

3d. The testimony of Spielman was material to his defense, without which it is apparent he could not safely

proceed to trial. The court, therefore, having excluded that, should have granted a continuance. Suppose this testimony had been in the form of a deposition, which on the motion of the adverse party had been suppressed, it will not be seriously contended that the defendant below upon terms as to payment of costs would not have been entitled to a continuance. He is equally so now. There is no doubt the copy of Spielman's evidence set out in the record is substantially what he would have testified to had his deposition been taken. Where, therefore, such evidence is suppressed and it is so material that the party in whose favor it was taken cannot safely proceed to trial, a continuance upon such terms as may be just should be granted.

4th. As stated at the outset, the case was not tried upon the issues made by the pleadings. This issue is simply whether the transfer of the property in question was made to hinder or defraud creditors of O'Hearn. The case must be tried upon the facts then existing, not upon what may have transpired between O'Hearn and other parties months afterwards. In other words, did O'Hearn transfer this property to Lynch to prevent it from being applied in payment of his debts, and did Lynch have knowledge of such facts in connection therewith as would have put a man of ordinary prudence upon inquiry? This must be determined from the facts and circumstances then existing. As there must be retrial of this case we will not discuss the facts.

Some objection is made to the instructions, but as in the next trial the actual questions involved and no others will probably be tried, it is unnecessary to review them.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

COBB, J., concurs.

REESE, J., dissenting.

I cannot agree with my associates in the conclusion reached in this case, in holding that the trial court erred in the exclusion of the testimony of plaintiff in error offered on the trial of this cause.

By reference to the stipulation it may be seen that the testimony of Spielman might be used and given in evidence in the trial. There is no intimation in the record anywhere that the copy of the testimony was the especial property of the plaintiff in error, that it had been procured at his expense, or that it was not the property of the defendant in error, nor procured at the joint expense of both. It was stipulated that this testimony might be used in the trial. Not by plaintiff in error to the exclusion of defendant in error, but rather by either party to the action. For aught that appears, and in support of the holding of the trial court, we must presume, and a proper construction of the stipulation must be, that either party had the right to use this testimony. At the commencement of the trial defendant in error asked permission to see this testimony, presumably that he might use it, or perhaps to examine it to ascertain whether or not he desired to exercise his right to introduce it. He was refused the use of it, which by the stipulation, was his right. The court was asked to order the production of the testimony. Upon a full hearing, and presumably upon a full knowledge of the facts, he ordered plaintiff in error to produce the desired paper. This order was conditional, easy to be complied with, reasonable, and no doubt just. The application appealed to the discretion of the court. It must be presumed, in the absence of a contrary showing, that the order of the court was based upon sufficient evidence. It would be a waste of time here to cite the many and uniform decisions of this court to the

effect that error will *never* be presumed—it must affirmatively appear. Nothing is here to show what the evidence upon which the court acted was. But were it otherwise, I think a decision which would deprive a trial court of the necessary and proper discretion in such a case would be wrong. I cannot see how it can possibly "affirmatively appear" that the court erred in making the order.

After the order was made, plaintiff in error, with full knowledge that he could not introduce the testimony without a compliance, defied the court and its order and refused to allow an inspection of the testimony. If the order was right, which it must be presumed to be, the court did right in enforcing it. When the time comes that an order of court, made in a case then on trial, concerning documents and instruments to be used in evidence, and to which the parties by their stipulation are equally entitled, may be promptly reversed and nullified by one of the parties to the action, and the authority of the court be thus ignored, it will then be time for the judge to vacate the bench and seek some other field of labor.

Again, there is nothing in, on, or about the offered testimony, anywhere, to show that it is the testimony of plaintiff in error "given on the trial of this case in March, 1883," or at any other time. It is headed with the words, "Direct examination of Benjamin Spielman by Mr. Mc-Allister," and is followed by the words, "This is all of the testimony of Benjamin Spielman," and to which the name of the court reporter is added in print by type-writer. When the testimony was taken, in what court, or in what case nowhere appears. As to whether Mr. Wheeler was court reporter at the time he made the copy, or whether he copied it from the records of his office nowhere appears. For the purposes of this case we may admit all that is said in the opinion of the majority as to the reports of the evidence being records, and that duly certified copies may be used, etc., and that they are entitled to all the credit of

certified copies of any records. But how is this copy certified? It cannot be claimed that E. M. Battis copied it, for it is shown affirmatively that it is copied by Mr. Wheeler. If it is "duly" certified by him, that certificate is all included in the words "copied by." Again, this "certificate," if such it is, is not signed officially, no official title being used. Suppose in a case on trial it should be stipulated that a judgment of a court between the parties might be "used or given" in the trial, but instead of the judgment a party presents a copy of a judgment which failed to show the parties between whom it was rendered, and instead of the usual official certificate as to its genuineness, etc., it should be followed by the words, "copied by John Doe," without any suggestion of official character on the part of the *copyist*. Would it be treated by any court as a "duly certified copy" of the judgment referred to in the stipulation? If so I confess that my reading has been at fault.