CHARLES V. CRAW, EXECUTOR OF THE LAST WILL AND TESTAMENT OF GEORGE W. CRAW, v. M. M. ABRAMS ET AL.*

FILED APRIL 9, 1903.    No. 12,752.

1. **Official Bond:** DENIAL OF EXECUTION: EVIDENCE. Production of an alleged official bond from the proper official custody, together with the record of its approval, are not sufficient evidence of its execution when the latter is denied.

2. **Sheriff:** PROCEEDS OF JUDICIAL SALE. The statute constitutes the sheriff making a judicial sale of real property the sole custodian of the fund derived from such sale, between the date thereof and the date of confirmation, and, upon the happening of the latter event, makes it his duty to pay the money to the person or persons entitled thereto.

3. ———: ———: CLERK OF COURT. The sheriff and the purchaser disobey this statute at their peril, but they can not by such disobedience, and the payment of the money to the clerk of the court, impose obligations upon him, as such clerk, foreign to the duties of his office.

4. **Tender.** A tender in an answer or during the progress of the trial, does not necessarily admit the validity of the plaintiff's cause of action.

ERROR to the district court for Antelope county: JAMES F. BOYD, DISTRICT JUDGE. *Affirmed in part.*

* Rehearing allowed.    See opinion, p. 553, *post.*

*William Vincent Allen* and *Willis E. Reed,* for plaintiff
in error.

*Norman D. Jackson, Otis A. Williams* and *Edward* D.
*Kilbourn, contra.*

AMES, C.

In an action for the foreclosure of a real estate mort-
gage, the court entered a decree of foreclosure and sale,
which concluded as follows:

"It is therefore considered, adjudged and decreed by the
court that in case the defendant fails for twenty days from
the entry of this decree to pay or cause to be paid to the
plaintiff or clerk of this court, first the costs of this ac-
tion taxed at $——, and the sum of $2,685.55, so found
due, with interest thereon at the rate of eight per cent.
per annum from the date hereof,  *  *  *  that the de-
fendants be foreclosed of all equity of redemption, or other
interests in said mortgaged premises; that said mortgaged
premises be sold, and an order of sale shall be issued to
the sheriff of Antelope county, Nebraska, as upon execu-
tion, and bring the proceeds thereof into court to be ap-
plied in satisfaction of the sum so found due, in the order
of their priority as above found; that he shall execute to
the purchaser of said real estate a good and sufficient deed
of conveyance therefor, and put such purchaser in the
actual possession of said premises."

It will be observed that the decree directs that the
premises be sold "as upon execution," but whether this
direction has much force may be doubted, in view of the
fact that the methods of judicial and execution sales con-
templated by the statutes are apparently the same, where
no specific procedure is enacted. Section 498 of the Code
of Civil Procedure enacts: "If the court upon the return
of any writ of execution or order of sale for the satisfac-
tion of which any lands and tenements have been sold,
shall, after having carefully examined the proceedings of

the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this title, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer makè to the purchaser a deed of such lands and tenements; and the officer on making such sale may retain the purchase money in his hands until the court shall have examined his proceedings as aforesaid, when he shall pay the same to the person entitled thereto, agreeable to the order of the court; Provided, That the judge of any district court may confirm any such sale at any time after such officer has made his return, on motion and ten days' notice to the adverse party or his attorney of record, if made in vacation. When any sale is confirmed in vacation, the judge confirming the same shall cause his order to be entered on the journal by the clerk."

Section 854 is as follows: "The proceeds of every sale made under a decree in chancery, shall be applied to the discharge of the debt adjudged by such court to be due, and of the costs awarded, and if there be any surplus, it shall be brought into court for the use of the defendant, or of the person entitled thereto, subject to the order of the court."

It will thus be seen that the statute contemplates that in the case of a judicial or execution sale, the officer making the sale shall retain the money in his hands until confirmation, and shall then pay the same, or so much thereof as may be requisite, to the party entitled thereto, and that only the overplus thereof, if any, after making such payment, shall be paid into court. Whether, in violation of this statute, an order of the court directing the sheriff or other officer to pay the purchase money into court or to the clerk of the court, pending the confirmation, would be valid, we do not think it necessary to decide, because the order and the statute should be so construed, if possible, as to harmonize with each other, and there does not seem to be any necessary conflict between them. The sheriff is an officer of the court, and money in his hands, acquired

in the execution of judicial process, is in as true a sense money in the possession of the court as is money in the hands of any other officer of the tribunal, so that it seems to us that the order directing the officer to bring the proceeds into court was not equivalent to an order to pay it to the clerk or to pay it into the court in any specific sense, but simply a direction to retain the money in his possession, as the statute provides, and to have it with him before the court when his return of the sale should be presented for examination and confirmation. But whether the order and the statute are in harmony or in conflict, the sheriff regarded neither. Having advertised and offered the land for sale, he struck it off to one Barkdall, as purchaser, for $2,050, that sum being less than the amount of the decree, and made the usual return of sale. He did not, however, receive any part of the purchase money which was paid by Barkdall to the defendant Abrams, who was at the time clerk of the court. Abrams made an entry of the fact on the judgment record and gave the purchaser a receipt for the money, which, without fraud or censurable negligence, he deposited in a national bank at Neligh. Within a short time afterwards the bank became insolvent, and was taken into possession by a receiver appointed by the comptroller of the currency. Abrams made proof of his claim and received dividends thereon amounting in the aggregate to $1,332.50. It does not appear from the record that the sheriff's sale was ever confirmed by the court, or that the officer ever conveyed or attempted to convey the premises.

This is an action by the plaintiff in foreclosure upon the official bond of the clerk to recover the amount of the deposit. A breach of the obligation is assigned in the petition in the following words: "That on the 29th day of August, 1898, by virtue of an order of the district court in an action then pending in said court in which this plaintiff was plaintiff and Orson Fields et al. were defendants, there was paid into the hands of M. M. Abrams as clerk of the district court of said county the sum of

$2,050 for the use and benefit of this plaintiff," and that he had failed to account for and pay over the same.

Abrams answered, admitting the receipt of the money but denying that he received it in his official capacity, or otherwise than as an individual depositary for the personal accommodation of Barkdall, and without compensation paid or promised. He further averred his freedom from negligence in the keeping of the money on deposit in the bank, the proof of the claim against the institution, and the receipt by him of the above mentioned sum in dividends, and offered to pay that amount to the plaintiff and to assign to him the receiver's certificate in satisfaction of the demand in suit.

The separate answers of the sureties were, in substance, general denials. A jury was waived and a trial had before the court, who rendered a judgment generally in favor of all the defendants. The plaintiff prosecutes error.

On the trial the plaintiff offered and the court received in evidence an instrument purporting to be the bond in suit, together with a certified copy of the record of the county board approving it. The defendants objected to both offers, and there was no other attempt to prove the execution, delivery or acceptance of the bond. We think the evidence is incompetent and insufficient to support a judgment against the defendants upon the instrument. This court held in *Holt County v. Scott*, 53 Neb. 176, that "the fact that an official bond has been approved does not of itself constitute or evidence the delivery and acceptance of the bond." Notwithstanding this rule it might, perhaps, be held that if the execution, that is the signing of the instrument by the obligors had been proved, the custody of it by the proper officials, together with the record of its approval, would be *prima facie* evidence of its delivery and acceptance; but, the answer being a general denial, we think that until its genuineness is established, no presumption can be entertained concerning it. As respects all the defendants except the clerk, we are

satisfied that, for the reason just stated, there is in the record insufficient competent evidence to sustain a recovery against them, and that as to them the judgment should be affirmed.

As respects the clerk, he admits the receipt by him of the money during his incumbency of the office, but his answer tenders two defenses, first, that he did not become the custodian of the money in his official capacity; and second, that such liability as he is subject to therefor is upon his common law obligation as bailee. The plaintiff contends that the defendant has waived this latter defense by the tender made in his answer and repeated upon the trial. In support of this proposition the plaintiff relies upon the decisions of this court in *Murray v. Cunningham*, 10 Neb. 167; *Cobbey v. Knapp*, 23 Neb. 579, 591; *Phœnix Ins. Co. v. Readinger*, 28 Neb. 587, to the effect that "a plea of tender in an answer is an admission that the amount tendered is due the plaintiff." We are of opinion, however, that the rule thus announced is not of as broad application as the plaintiff would have us believe. The defendant does, indeed, admit that he is responsible for the money as bailee without hire; and by offering to pay the sum in his hands to the plaintiff, he may well be held to have admitted that the latter has in some way succeeded to the rights of the bailor and that the sum tendered is due upon the contract of bailment. But we do not discover anything in such admissions inconsistent with his explicit denial that he is or has been the official custodian of the fund or liable therefor upon his official bond. We have examined the authorities referred to in the decisions above cited and do not find anything in them calling for so extended an application of the doctrine as the plaintiff contends for. In those cases there was either no question about the nature or validity of the contract in suit, but only as to the amount recoverable thereon, or else, as in the case of *Cox v. Brain*, 3 Taunt. (Eng.) 95, there were several counts and the money was tendered generally. In this case Lord Chief Justice Mans-

field said that the defendant might have preserved his rights by pleading *non assumpsit* to the first count, on the special contract, and paying the money into court on the *quantum valebant*. The decision is an authority directly to the contrary of the contention of the plaintiff, and is to the effect that the tender is an admission of the defendant's common law ability as bailee only, and does not impair his defense in his official character.

This brings us to the final question in the case, concerning which we have, perhaps, already sufficiently indicated our opinion. The statute explicitly makes the sheriff the official custodian of moneys obtained upon the judicial sale of real property until the confirmation of the sale, when he is required to pay the same to the persons entitled thereto. Only an unclaimed surplus thereof, if any, is he permitted to pay into court for the benefit of those ultimately entitled. Whether in any case the court can by order relieve the sheriff of this responsibility, it is not necessary now to inquire. In our opinion, the order in the case at bar "to bring the money into court," was no more than a specific direction to the sheriff to obey the mandate of the statute. Both the officer and the purchaser were guilty of disobedience at their own peril, but their conduct in that particular did not impose upon the clerk of the court, as such, any obligation foreign to the duties of his office.

Upon the undisputed facts disclosed by the record we are of opinion that the plaintiff was entitled to judgment against the defendant Abrams for the amount tendered in his answer, but without costs or interest accruing subsequently to the date of the tender.

It is recommended that the judgment of the district court as to all the defendants except Abrams be affirmed, but as to said defendant the judgment be reversed and the case remanded for further proceeding consistent with this opinion.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court as to all the defendants except Abrams be affirmed, but as to said defendant the judgment be reversed, and the case remanded for further proceeding consistent with this opinion.

Affirmed in part.

The following opinion on rehearing was filed November 5, 1903. *Judgment of affirmance adhered to:*

1. **Official Bond:** Denial: Evidence. The introduction in evidence of a certified copy of what purports to be an official bond, without proof of its execution and delivery, is not sufficient to authorize the court to render a judgment against the sureties thereon where • its execution and delivery are denied by them.

2. **Sheriff Sole Custodian of Proceeds of Judicial Sale.** The sheriff making a judicial sale of real property under a decree of foreclosure, is the sole custodian of the fund derived from such sale between the date thereof and the confirmation of such sale, and upon such confirmation it is his duty to pay the money to the person or persons entitled thereto in conformity to the order of the court.

3. **Payment to Clerk:** Liability Not Determined. Whether the payment of the money by the purchaser or by the sheriff to the clerk of the court in vacation, and before a confirmation of the sale, is payment into court so as to charge the clerk and his sureties on his official bond with its repayment, is not determined.

4. **Denial of Execution and Delivery of Bond by Sureties:** Tender by Principal. Where the sureties deny the execution and delivery of the official bond, and the clerk defends on the ground that he merely received the money as bailee, and not in his official capacity as clerk, a tender of part payment by him does not impair the defense of the sureties.

5. **Confirmation is Condition Precedent to Plaintiff's Right to Proceeds.** Before a plaintiff in a foreclosure suit can recover the proceeds of a judicial sale on his decree, he must show his right thereto by proving the confirmation of the sale.

6. Former judgment adhered to.

Barnes, C.

The opinion written by Commission Ames in this case, by which the judgment of the trial court was affirmed, was

approved by the court and filed on April 9, 1903. A rehearing was allowed, and the case is now before us for the second time. The plaintiff in error, by this suit, sought to recover a judgment against the defendant Abrams, as clerk of the district court of Antelope county, together with the sureties on his official bond, for money which he alleged had been paid into court under a decree of foreclosure in which he was the plaintiff. The sureties denied the execution and delivery of the bond, as will appear from the facts stated in our former opinion. It is now contended:

1. That so much of that opinion as held that the production of an alleged official bond from the proper official custody, together with the record of its approval, are not sufficient evidence of its execution, is not a correct statement of the law. A re-examination of that question only serves to strengthen our belief in the correctness of this rule of law. In the case of *Holt County v. Scott,* 53 Neb. 176, we held that "the fact that an official bond has been approved does not of itself constitute or evidence the delivery and acceptance of the bond." It is further stated in the opinion therein (p. 198) that "if the bond is approved, this fact also shows that the investigation has disclosed everything to be satisfactory, but the approval does not constitute or evidence a delivery and an acceptance." We are thus fully committed to the doctrine complained of. Indeed, it would seem that there should be no question about this. It can not be contended that where the execution and delivery of an official bond is squarely denied by those sought to be charged thereby as sureties, its mere production, without any proof whatever of its execution and delivery, is sufficient evidence of such fact to bind such sureties. In such a case it would be incumbent upon the person seeking to recover upon the bond to first introduce some competent evidence of the fact of its execution and delivery, before the bond itself could be received in evidence. We are aware of no case which holds a contrary doctrine. But it is contended

in this case that because a certified copy of what purported to be the official bond on which a recovery was sought was introduced in evidence, the rule above stated can not be invoked. In other words, counsel insists that section 408 of our Code of Civil Procedure, in effect, makes the certified copy of an instrument of greater probative force than the original instrument itself. It is contended, in effect, that a certified copy of any instrument which by authority of law is to be filed or kept in any public office, may be introduced in evidence; and when so introduced, although the execution of the original, of which it is a copy, is denied, it becomes *prima facie* evidence of such execution, and dispenses with the necessity of any proof thereof. We can not approve of this doctrine. The effect of the statute in question is to authorize the introduction of a certified copy of an instrument in place of the original, and make it of equal ·credibility therewith. It does not purport to make it of any greater probative force, nor is it intended thereby to dispense with any of the formal proofs necessary to establish the execution of an original instrument when such execution is denied.

In *Spielman v. Flynn*, 19 Neb. 342, it was held that a certified copy of the reporter's notes taken at a former trial was admissible in evidence under a stipulation; that the testimony of the witness taken at the first trial should be read in evidence in the second trial without calling such witness.

In *Hall v. Aitkin*, 25 Neb. 360, it is stated that in a case of foreclosure of a chattel mortgage, where such foreclosure was not resisted, nor the authority of the mortgagee questioned, a certified copy would not be necessary, and that the original mortgage on file would be sufficient to justify the proceeding when collaterally attacked. The validity of the mortgage in that case was not questioned, and on page 363 of the opinion we find the statement "that a certified copy of the chattel mortgage which had attached thereto the proper certificate, was properly introduced in evidence under section 408 of the Code of Civil Procedure."

In *First Nat. Bank of Wilber v. Ridpath,* 47 Neb. 99, the court said that "a mortgage properly certified to by the county clerk as a copy of the instrument on file in his office, was competent evidence under section 408 of the Code." But in that case the execution of the mortgage was not in question.

In the case of *Equitable Building & Loan Ass'n v. Bidwell,* 60 Neb. 169, it was held that a certified copy of the articles of incorporation of a building and loan association was primary proof of the right of such association to transact business.

In *Clough v. State,* 7 Neb. 320, we said that a certified copy of the stenographer's report of the trial might be introduced in evidence.

In *Brownell v. Fuller,* 54 Neb. 586, it was held that "in cases where the clerk of the district court is authorized to settle bills of exceptions, the act may be performed by a deputy, it not being shown that the principal is absent," and leave was given to file an affidavit, which it was claimed was not properly made a part of the bill of exceptions.

In *Missouri P. R. Co. v. Baier,* 37 Neb. 235, the question was as to the admissibility of a certified copy of the letters of administration issued under the order of the county court. It was held that such copy was admissible under section 408 of the Code of Civil Procedure. These are the cases decided by this court which are cited by counsel in support of his contention, and it will be observed that in none of them was the direct question involved herein under consideration. Many cases from other jurisdictions are cited in support of this contention, but none of them touch the point under consideration, and it may be conceded that all of them state the law correctly, yet they do not go to the extent of holding that a certified copy of an instrument has any more probative force than the original. We, therefore, adhere to the rule as heretofore stated.

It is further urged that a certified copy of the official

bond was actually received in evidence. This is true, as disclosed by the record, and yet it was insufficient to prove the execution and delivery of the original bond on which the action was brought, and it was not sufficient to sustain a judgment against the sureties under the issues in this case.

2. The plaintiff further contends that so much of our opinion as holds that the sheriff making a judicial sale of real property is the sole custodian to the fund derived from such sale, between the date thereof and the date of confirmation, and upon the happening of the latter event it is his duty to pay the money to the person or persons entitled thereto, is erroneous. We adhere to this statement, because it is in direct conformity to the statute relating to such sales.

It is further contended, under this subdivision, that when the sheriff paid the money to the clerk of the court, the principal defendant herein, notwithstanding the statute, the clerk received the money by virtue of his office; in other words, that there was a payment into court, and the clerk, together with the sureties on his bond, became charged with the duty of accounting for and paying the money over to the plaintiff. The rehearing in this case was granted because the court was in some doubt as to whether or not the opinion was correct on this point. But for the reason that our former judgment must be adhered to upon other grounds, it is unnecessary to further consider this point.

3. It is contended that when the principal defendant, Abrams, made his tender in court, he thereby acknowledged the indebtedness. This doctrine is not questioned in our opinion, but it is stated therein that such tender does not impair the defense of the sureties. We think this is a correct statement of the law. The sureties were making separate defenses for themselves, while the principal was defending for himself alone, and his tender would not bind the sureties unless they participated therein. Again, such tender, so far as Abrams was con-

cerned, only admitted that he had· received the money and was liable for it as bailee.

4. There is another reason why we should adhere to our former decision, which is that the record is silent as to whether or not the judicial sale, under which the money sought to be recovered was paid to the sheriff or the clerk, was ever confirmed. Without proof of confirmation, the plaintiff in a foreclosure suit is not entitled to recover the money bid at the sale, no matter in whose hands it may be. In *Trompen v. Hammond,* 61 Neb. 446, it was held that before a plaintiff can recover the proceeds of a judicial sale on his decree, he must show his right thereto by proving the confirmation of the sale by the court. That this is a correct statement of the law there can be no doubt: The sale in this case amounted to nothing more than a bid or offer to purchase the land, an acceptance thereof by the sheriff, and a payment of the money into his hands to await the approval of the court. Without such approval and a confirmation of the sale, it would be the duty of a sheriff to return the money to the bidder; and until the sale was confirmed by the court, and the sheriff ordered to make a deed to the purchaser, the. plaintiff was not entitled to the money, or any part of it.

It follows that the judgment of the district court was right, and should be affirmed, and we therefore recommend that our former decision be adhered to.

GLANVILLE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, our former judgment is adhered to.

FORMER JUDGMENT ADHERED TO.

ALBERT, C., concurring.

I concur in the conclusion reached by Commissioner BARNES on the several propositions discussed by him. But it is not quite clear to me that the effect to be given to

a certified copy of an instrument as evidence is necessarily involved in this case. The original bond was introduced in evidence. The certified copy was substituted, I infer from the record, merely for the purpose of preparing a bill of exceptions, and was not a part of the evidence before the trial court.

But assuming that the certified copy was before the trial court, I concur with my associate in the proposition that its production did not dispense with the necessity for proof of the execution of the original by the sureties. Section 408, Code of Civil Procedure, upon which the plaintiff relies, is as follows: "Duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed." The object of that section is not to dispense with proof of the execution of a private writing, but to obviate the necessity of producing public records in court, which is always inconvenient, and often impossible, as they are frequently wanted in more than one place at the same time.

While the bond itself, or at least a certified copy thereof, was introduced in evidence, there was no proof of its execution, and it was received over the objections of the sureties. There was, therefore, no competent evidence before the court of the execution of the bond by the sureties. It is a familiar rule that where the findings of a trial court are assailed on the ground that they are not sustained by sufficient evidence, only competent evidence will be regarded. As competent evidence on a vital point in plaintiff's case against the sureties is wholly lacking, the findings and judgment in favor of the sureties must of necessity be affirmed, regardless of the merits of any other proposition in the case.