FROTUNATO ZANCANELLA, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED MAY 17, 1913. No. 17,213.

1. **Street Railways:** ACTION FOR PERSONAL INJURY: ADMISSIBILITY OF EVIDENCE. The plaintiff testified that, as he attempted to cross the track of the street car, he was struck and knocked down by a passing car; he did not see the car until it struck him; while the car was passing he could see that it was running at from 25 to 35 miles an hour. *Held,* That, while his evidence was not competent for the purpose of determining the exact speed of the car, it was properly admitted as tending to support the allegation that the person in charge of the approaching car failed to reduce its speed and advance slowly while passing another car.

2. ———: ———: ———: PHOTOGRAPHS. Photographs showing the location of the alleged accident and the condition of the street and surroundings are not necessarily to be excluded from the evidence merely because the situation is capable of verbal description.

3. ———: ———: NEGLIGENCE: INSTRUCTIONS. The plaintiff testified that after he had alighted at a street crossing on the west side of the south-bound street car, intending to go west on the street,

he changed his mind, and started to go east across the parallel track, and was struck by a passing car. *Held,* That it was erroneous to submit to the jury the question whether the conductor was negligent in not warning him of danger in crossing the parallel track, there being no evidence that the conductor knew that he intended to cross the track, or knew before he alighted from the car that another car was approaching.

4. ———: ———: ———: EVIDENCE. Under such circumstances, the testimony of the plaintiff that he did not see or hear the approaching car is not sufficient to prove the allegation of his petition that there was no headlight on the approaching car, nor any bell sounded as it approached.

5. **Appeal:** INSTRUCTIONS. It is erroneous to submit to the jury issues upon which there is no evidence.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed.*

*John Lee Webster* and *W. J. Connell,* for appellant.

*George W. Cooper* and *T. W. Blackburn, contra.*

SEDGWICK, J.

Between 10 and 11 o'clock on the evening of July 14, 1909, the plaintiff became a passenger on one of the defendant's cars at Farnam street in Omaha. He informed the conductor that he wanted to leave the car at G street in South Omaha. When they reached G street, the conductor notified him, and he left the car. Early the next morning he was found unconscious some distance beyond the crossing at G street. His foot was crushed so that his left leg was necessarily amputated below the knee, and he had suffered other injuries. He brought this action against the defendant in the district court for Douglas county, alleging that the defendant's negligence was the cause of his injuries. The trial resulted in a verdict and judgment in his favor, and the defendant has appealed.

The defendant contends that the evidence is entirely insufficient to support the verdict; that there was failure of evidence to show negligence on the part of the defendant; that the evidence does not satisfactorily show that

the injury was caused by the defendant's car, and, if it was so caused, it was occasioned by the plaintiff's own negligence; and that the court erred in submitting various questions to the jury of which there was no evidence, and in refusing instructions offered by the defendant. The plaintiff's case depends almost entirely upon his own evidence. He testified that he was going to South Omaha to spend the night with his friend, Jim Canadella; his friend lived on G street, west from the street car track about two blocks; that he and his friend are Austrians, and the plaintiff is unfamiliar with the English language. He appears in that respect to be somewhat embarrassed in giving his testimony. He says that, when the conductor stopped the car at G street, he got off from the car, and passed towards the back end of the car, and the car went on. It was a very dark and stormy night, and there were no lights there, and he had forgotten the street number of his friend's residence, and, seeing a light at some distance to the east, he started at once across the parallel track; that he looked both north and south, and saw nothing, and just as he stepped upon the other track a north-bound car struck him, knocked him down and passed over his foot. He then saw by the light in the car that the car was running at from 25 to 35 miles an hour. The defendant objected to this testimony in regard to the speed of the car, and there is much discussion of this objection in the briefs upon the part of both the plaintiff and defendant.

It seems clear that the plaintiff did not show himself competent, under the circumstances, to testify with any degree of accuracy as to the rate of speed of the car. He did not see the car until after he was hurt, and was then lying upon the ground in his injured condition, and but a few feet from the car that was passing. The evidence, however, shows that there is a wholesome and necessary rule of the company that, when a car is approaching another car of the company that has come from an opposite direction and stopped to receive or land a passenger, the speed of the approaching car must be reduced, and such

car must advance slowly until it has passed, and ready to stop immediately if necessary to avoid injuring any person getting off or on, or persons or vehicles who may be crossing the street. If this rule was violated the company was negligent; and, while the evidence of the plaintiff was wholly inadequate to establish to any degree of accuracy the exact rate of speed of the approaching car, yet it is not so clear that the jury might not find from this evidence that the person in control of this car failed to reduce its speed and advance slowly ready to stop immediately if necessary, as the rule required. It is true that the conductor of the car which the plaintiff had left testified that no other car was passing at the time, and there are circumstances that seem to corroborate this testimony of the conductor; but we cannot see that the court erred in submitting the consideration of this conflicting evidence to the jury. This evidence, then, was competent for the purposes indicated, and the court did not err in so regarding it.

The petition contained several allegations of negligence on the part of defendant. That, when the south-bound car stopped at the intersection to permit the plaintiff to alight, the north-bound car approached and ran over said intersection at a high and dangerous rate of speed; that there was no headlight on the north-bound car; that the bell was not sounded; that the man in charge of the car failed to keep a sharp lookout or be prepared to stop the car; and that the conductor on the south-bound car negligently failed to warn plaintiff of danger from the approaching car on the parallel track.

The defendant offered in evidence four several photographs of the location where the accident is supposed to have occurred. These were received by the court, but afterwards, upon motion of the plaintiff, were stricken from the record. The ruling of the court in striking these photographs from the record is assigned as erroneous. The photographs show the location of the tracks, the condition of the street on each side of the track, the location

of the buildings and other similar matters, and we do not
see how they could have misled the jury in any way. The
plaintiff says that "photographs are not generally admis-
sible where the situation they are intended to illustrate is
capable of verbal description," and undoubtedly some
courts have applied such a rule, but they are in the minor-
ity, and that is not the rule in this state. *Carlson v.
Benton*, 66 Neb. 486. In *Omaha S. R. Co. v. Beeson*, 36
Neb. 361, quoting from Thompson on Trials, it was said:
"Where an inspection of the premises is proper, but im-
practicable or impossible, a photographic view of it is
admissible." It was not intended to say that photographs
could not be received under any other circumstances. The
admission of this evidence is largely within the discretion
of the trial court, depending upon the circumstances and
the condition of the evidence, and this evidence is not of
so much importance in this case that the error in exclud-
ing it would necessarily require a reversal.

During the trial of the case, the plaintiff was permitted
to amend his petition by inserting the allegation "that,
notwithstanding it was dark and stormy, the conductor of
the car on which plaintiff was a passenger negligently
failed and omitted to warn plaintiff before he left the car,
or at any time, of danger from an approaching car on the
parallel or other tracks." The court submitted this ques-
tion to the jury in the instructions. The defendant insists
that there was no evidence before the jury justifying the
submission of this question, and we have not found in the
abstract sufficient evidence to justify it.

The condition of the plaintiff is indeed unfortunate. A
laboring man in a strange country; he has lost his limb
and has been otherwise injured so as to greatly affect, if
not destroy, his ability to supply himself with the necessi-
ties of life. The jury might naturally think that there
ought to be some remedy for him, but the defendant com-
pany cannot be required to provide for all who may use
their cars and meet with accidents to their injury. Un-
less it is affirmatively proved that the company or its em-

ployees were guilty of some negligent act which was the proximate cause of the injury, it is not liable. If society in general owes a duty to one so injured, it cannot shift that duty upon one not at fault. There seems to be no possible theory under this evidence upon which to charge negligence upon the defendant company, unless it could be found that while the south-bound car, upon which the plaintiff was a passenger, was standing for the plaintiff to alight therefrom, the north-bound car upon the parallel track passed it, and failed to reduce speed and advance slowly, ready to stop immediately if necessary, and that this neglect was the proximate cause of the injury. There is no affirmative evidence from which it could be found that there was no headlight on the approaching car, or sound of bell. These matters were not mentioned by the witness. He testified that he did not see or hear the car, and that he looked and listened. There is evidence that he was in a stupor or sleep from Omaha to the place of the accident, and that the conductor aroused him at G street. The car was an open one and so well lighted that he saw the lights until it was a block distant after it passed him. A car running at the rate he says this car did must have made sufficient noise to be heard by a careful listener before it struck him. The other car, he says, was between him and the approaching car until it began to move slowly just before the car struck him. This might have distracted his attention, if indeed he tried to give attention, and his statement that he did not see or hear the car tends as strongly to show the degree of care that he used, as it does to show that there was no sound or light to attract his attention. It does not amount to affirmative evidence of negligence in failing to show a head light or sound the bell.

Likewise, there was no evidence of negligence in failing to warn him of danger. He alighted from the west side of the car in a paved street. The parallel track was on the other side of the car. Two witnesses testified that after alighting from the car he went west nearly, if not quite, to

the sidewalk. He denies this, and says he went north along the side of the car. He says that he intended to go west on G street, until after he left the car, when he saw a light to the east and concluded to go in that direction. There is no evidence of any indication before he left the car of intention on his part to cross the parallel track. He alighted from the car in safety and in a safe place. There was no danger known to the conductor, and not known to the plaintiff. It is said in plaintiff's brief that, conceding the plaintiff's intoxicated condition (there was some evidence tending to show that he was intoxicated), "the presumption would be that he would go into a place of danger." This might call for a general warning that he was unfit to care for himself, but would not enable the conductor to foresee what dangers he might run into. It was not negligence to fail to tell him not to go around the car from which he was alighting without looking and listening for a passing car. The plaintiff's danger was not increased by such failure on the part of the conductor, for the plaintiff by his own statement knew that he must be careful, and must look and listen, which he did, and which was all that the conductor could have suggested. There is no evidence that the conductor knew that another car was approaching; he could not therefore warn him of that fact.

The form and language of the instruction given by the court are above criticism. The issues that they present are well and carefully presented, but there was no evidence to support them, with possibly the one exception which we have indicated. The trial court should, as far as possible, eliminate all superfluous matters, and submit to the jury only the controverted questions of fact upon which their verdict must depend. To submit to the jury matters not in issue, or to submit issues that are so wholly unsupported upon the one side or so conclusively established upon the other that reasonable minds could not differ with regard to them, is erroneous.

Putting these unsupported questions before the jury was

manifestly misleading and requires a reversal of the judgment.

REVERSED AND REMANDED.

REESE, C. J., BARNES and FAWCETT, JJ., concur.

LETTON, ROSE and HAMER, JJ., not sitting.