FROTUNATO ZANCANELLA, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JULY 11, 1914. No. 18,440.

1. **Appeal:** MISCONDUCT OF JURY. Misconduct of the jury without the knowledge or consent of the parties interested will not require a reversal, unless it appears that it might have affected the verdict.

2. **Pleading:** AMENDMENT. Amendment of a pleading should be allowed when it is in "furtherance of justice." Such terms should be imposed as are reasonable and just. Under the circumstances in this case, the court erred in refusing the requested amendment of the answer.

3. **Street Railways: NEGLIGENCE: EVIDENCE.** If a plaintiff in an action for damages alleged to have been caused by the negligence of defendant, a street railway company, testifies that he stood by the side of the railway track, on which a car was approaching at a speed of 25 or 30 miles an hour, and looked and listened, but, because of the darkness of the night and the absence of a headlight on the car, he neither saw nor heard the car until, upon stepping upon the track, he was struck thereby, and afterwards saw the car at a distance of about two blocks, such evidence is so impossible in the nature of things as to have no probative force.

4. ———: ———: ———. The evidence in this case, indicated in the opinion, fails to prove that negligence on the part of the defendant was the proximate cause of plaintiff's injuries.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed and dismissed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*George W. Cooper* and *T. W. Blackburn, contra.*

SEDGWICK, J.

This case was once before in this court. On this last trial the plaintiff again recovered a verdict, and the defendant has appealed. There was considerable additional evidence taken, some of which will be referred to, but it is not thought necessary to repeat the statement of the uncontroverted facts, which may be found in the former opinion. 93 Neb. 774.

1. The defendant alleges that there was improper conduct on the part of the jury; some of them in the hall of the courthouse during an intermission conversed with Miss Hamilton, a nurse who took care of the plaintiff after his injury. She was an important witness on the trial, and her evidence appears to be wholly disinterested and reliable. Her affidavit was filed upon the motion for a new trial, in which she testified that one or two of the jurors in the presence of others asked her questions about the testimony she had given. She described a juror who questioned her as a "Jew or Dago," and shows that he and other jurors manifested a very unusual interest in the

cause of the plaintiff. The plaintiff himself was present at the time and appears to have addressed some remarks to the witness, but none of a nature that would ordinarily, perhaps, be regarded as objectionable. This was clearly misconduct on the part of the jury, and, if the plaintiff had encouraged it, would be sufficient ground to set aside the verdict. The plaintiff, perhaps, in view of the circumstances, and on account of his unfamiliarity with the language, is excusable for not having taken measures to prevent this misconduct. Misconduct of this nature on the part of the jury without the knowledge or consent of the parties interested would not be sufficient ground for setting aside the verdict, unless it appears that it might have affected their conclusion.

2. Plaintiff testifies that he took the car at Farnam street for South Omaha; that he informed the conductor that he wanted to leave the car at Twenty-fourth and G streets, and when it arrived at G street the conductor notified him; that it was then about 12 o'clock at night; that it was an open car; that he was sitting on the second seat from the rear and got off on the west side; he immediately passed around the back end of the car, intending to cross the parallel track and go east on G street; that, after the car on which he had arrived had left, he stepped between the two tracks and looked both north and south and listened, but did not see nor hear any approaching car; he then stepped onto the east track and was immediately struck by a north-bound car. His foot was crushed, and he was otherwise injured, and he says that he crawled on his hands and knees along between the tracks toward H street, about half a block, and then crossed over the west track, and became unconscious, and so remained until about 10 o'clock of the next day, when he found himself in the hospital in South Omaha. He says he did not see the approaching car until it struck him, and then saw it again after it had gone about two blocks. The defendant insists that it is impossible that he should have been injured in the manner which he describes; that his story

is proved by testimony of other witnesses to be untrue; that the trial court erred in excluding testimony that the plaintiff was intoxicated at the time, and also erred in not instructing the jury to find a verdict for the defendant. He testifies that his errand to South Omaha was to see his friend Candanella, who resided on G street in South Omaha. His friend had given him the number of his residence, which he had on a piece of paper in his pocket. It was a dark and stormy night. There was no light at the crossing at G street. Several witnesses testified that the plaintiff attempted to return to Omaha. The conductor and motorman and a passenger on a south-bound car testified that the plaintiff stopped the car and asked them if it was going to Omaha. They told him that the cars going to Omaha went in the other direction. Others testified that he stopped a north-bound car and made a similar inquiry, and was told that that car was not going to Omaha; that he should take the next car. He had never been to South Omaha before.

It was claimed by the defendant that the plaintiff was in an intoxicated or semi-drunken condition, so that he was unable to form any definite purpose, or to properly take care of himself. The conductor of the car on which he rode to South Omaha and the police officer who was on the car at the time testified that the plaintiff was asleep all of the way from Omaha, and the defendant offered to prove by these two witnesses that the plaintiff was intoxicated, and was unable to walk steadily, and also offered to prove, by the physician who saw him a few minutes after the accident, that the plaintiff had been drinking intoxicating liquors, and made similar offers of proof by other witnesses. This evidence was excluded by the court, on the ground that there was no allegation in the answer that the plaintiff was intoxicated at the time. The defendant asked leave to amend the answer and include that allegation. The court refused to allow such amendment. Under the circumstances of the case, and in the condition of the evidence and record at the time, we think

that this ruling of the court was erroneous and was highly
prejudicial to the defendant. "The court may, either be-
fore or after judgment, in furtherance of justice, and on
such terms as may be proper, amend any pleading, pro-
cess, or proceeding, by  *  *  *  inserting other allega-
tions material to the case." Rev. St. 1913, sec. 7712. This
statute has been many times construed by this court, and
the rule is that amendment should be allowed when it is
"in furtherance of justice" to do so. In the former trial of
this case, evidence that the plaintiff was intoxicated at the
time was received by the court, and all of the parties knew
that it was a substantial and important feature of the de-
fense. The petition alleged that the accident happened
"without fault on his part," and, if it is thought that evi-
dence of the plaintiff's intoxication at the time was not
competent under a general denial, the amendment should
have been allowed upon such terms as the court should
find were reasonable and just under the circumstances.
The plaintiff could not have been surprised at the offer of
this testimony. He made no showing that he was unpre-
pared to meet it.

3. The plaintiff's allegations of negligence on the part
of defendant rest entirely upon his own unsupported tes-
timony. He says that, after the car on which he was rid-
ing had gone on, he stood between the two tracks and sur-
veyed the situation. The car was approaching then at the
rate of 25 or 30 miles an hour, but he heard no sound, al-
though his hearing was good at the time. He saw the car
after it struck him, and saw it again two blocks farther
on, but he did not see it approaching. He says that it had
no headlight, and we are to infer from his evidence that it
contained no light of any kind that could be seen. He is,
of course, mistaken in saying that a street car approaching
at that rate of speed made no noise that could be heard by
one who was listening.

It is urged in plaintiff's brief that, it having been held
in the former decision of this case that the evidence jus-
tified submitting the case to the jury, that holding be-

comes the law of the case, and will control the decision on this appeal. This would perhaps be the rule if it clearly appeared that the evidence was the same upon both trials, but that is not the case here. In the first trial the plaintiff testified that when he left the car upon its arrival at G street he walked around the north end of the car and went east on G street, and was struck by a north-bound car which was passing the other car at great speed, 25 or 30 miles an hour. In the last trial his testimony was that, after he had left his car and the car had gone on, he stepped over the first track and stood between the two tracks and looked both ways and listened, but neither saw nor heard the approaching car, with evidence as to the speed of the car, and his ability to see it after it had passed him, as before stated. The story he now tells is impossible, and the manner of his injury is wholly unexplained. Several witnesses testify that all of the street cars on that line had headlights that night at that hour. Three witnesses testify that when the plaintiff left the car on which he rode he went immediately west to the side of the street. Two of these were the conductor and motorman of the car. It is suggested that they were under the influence of the defendant, and were therefore not to be believed as against the plaintiff. The third witness was a police officer on the car, and none of these three witnesses appears to be more interested in the result than the plaintiff himself. The plaintiff testifies that, after his foot was crushed, he crawled along between the tracks to the middle of the block, about 150 feet. He does not know why he did that, instead of going to the walk on the side of the street, and several witnesses who found him within a few minutes after the accident testify as to his condition, and to circumstances which strongly indicate that he was injured at or near the place where he was found, and are wholly inconsistent with the plaintiff's story. The plaintiff was a young man of foreign birth, about 23 years of age. He has suffered the loss of a foot and other terrible injuries, and seems to believe that he was in some manner

injured by one of defendant's cars, and that he ought to be compensated for such injury, but he fails to prove any negligence on the part of the defendant that could have been the cause of his misfortune. It is manifest that the plaintiff has failed to prove that negligence of defendant was the proximate cause of his injuries, as alleged, and has therefore no cause of action.

The judgment of the district court is therefore reversed and the cause dismissed.

REVERSED AND DISMISSED.