FOREST M. OAKES, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 29, 1920. No. 20906.

1. **Evidence.** Ordinarily a question involving the rate of speed of a street car is not a question for expert testimony.

2. **Street Railways:** PROXIMATE CAUSE OF INJURY: QUESTION FOR JURY. When the evidence is in direct conflict in respect to the proximate cause of an injury arising from collision with a street car, the question is one of fact for the jury.

3. ————: USE OF STREETS: NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. "Street railway companies have no such proprietary interest in that portion of the streets upon which their tracks are laid as limits the right of the general public also to use the same territory as a part of the public highway. Whether an injury resulting from such joint use is attributable solely to the negligence of the railway company, or is wholly or in part imputable to contributory negligence of the person by whom injury has been sustained, is a question of fact to be determined by the jury." *Omaha Street R. Co. v. Duvall*, 40 Neb. 29.

4. **Negligence:** QUESTION FOR JURY. When different minds may reasonably reach different conclusions from a given state of facts as to whether negligence or contributory negligence has been established, the question of negligence is for the jury.

Oakes v. Omaha & C. B. Street R. Co.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John L. Webster* and *William M. Burton,* for appellant.

*Myron L. Learned* and *Joseph T. Votava, contra.*

DEAN, J.

Plaintiff recovered a verdict and judgment thereon for $427 as damages for seven head of lambs that were destroyed and 40 that were injured by the negligent and unlawful operation, so it is alleged, of one of defendant's street cars on Twenty-fourth street, that being the main thoroughfare between Omaha and South Omaha. Defendant appealed.

The colliding car was coming from the north and the sheep were being driven from the south. The accident happened about 150 or 200 feet south of the point where U street intersects Twenty-fourth street.

Plaintiff resides on a farm about 3 miles south of Omaha, where he buys and feeds lambs for market. Between 3 and 4 o'clock in the afternoon of January 30, 1919, he left home, driving a flock of 280 lambs to be sold at the stock-yards at South Omaha. Assisting him as drivers were his son, Loren, about 13, and George Mosher, a stock-yards employee and sheep driver of 20 years' experience. At the time of the collision it was about 7 in the evening and dark. Twenty-fourth street swerves to the east about its own width just before and as it crosses the U street intersection and continues thence directly south. The street is 40 feet in width and slopes to the south.

Plaintiff testified that the car did not stop at U street; that he with his flock was about 150 feet south of the street car when he first saw it coming at or about U street; that the motorman, to whom he shouted at the top of his voice, did not slacken his speed; that the street lamp was lighted at the intersection and the electric headlight of the car was lighted; that it ran 100 feet

or more through the flock before it stopped; that when the lambs were struck they were piled up promiscuously in front of the car and on each side of it and beneath it; that just before the impact the sheep occupied about two-thirds of the width of the street and about 150 or 200 feet of its length; that the car finally came to a stop when it was about opposite plaintiff; that the shortest route between plaintiff's farm and the stock-yards lay directly north on Thirtieth street, but that owing to snow drifts it was impractical to drive the sheep that way; that the route he took was about a mile longer than by Thirtieth street, on which he would also be compelled to cross two or three tracks; that the snow was two or three inches deep on the level; that just before the collision they met four or five cars only a few minutes apart that were not running on regular schedule; that these cars and also a car they met after the collision stopped until they got the sheep off the track; that the prevailing conditions were substantially the same as when they met the car that caused the loss; that when the car struck the sheep its speed was from 20 to 25 miles an hour.

Roy Mace lives about 400 feet south of U street on Twenty-fourth street. He testified on the part of plaintiff that he saw the car approaching from the north, and that it was moving at the rate of 20 miles an hour; that it is customary for stockmen to drive sheep and cattle in the daytime on that street, and that it is not unusual to see them pass by in the nighttime on their way to the stock-yards, that are distant about eight or ten blocks. George Mosher, called by plaintiff, testified that the car came on at the rate of 20 miles an hour. He further testified: "The car come around there and ran into these sheep, and I put up my hands and hollered at him. I couldn't make him hear me, and he just missed me. I just got out of the road in time myself, or he would have got me. He piled these sheep all up in front of the fender, clean up to the glass before

he passed me. Then he carried these sheep down 100 feet, I guess, maybe better, maybe 150 feet, made a good run at it. * * * Q. When did you first see the street car, Mr. Mosher? A. I seen it when it came around the corner. Q. That was about how far in front of your sheep? A. Oh, about, I should say, 75 to 100 feet. Q. And do you know whether or not it let off a passenger there at that——A. They didn't stop to let nobody off, unless he jumped off."

The motorman and conductor and a passenger testified on defendant's part that the car stopped at U street, and that at the time of the collision it was running at the rate of about 6 to 8 miles an hour; another passenger that it was running "at medium speed." The conductor also testified that the motorman reversed his brakes, and when the car struck the sheep "it kind of slid into them," and stopped within a space of about 20 feet. The motorman further testified that he first saw the sheep about 30 or 35 feet away; that he then reversed the car and sanded the track, and that it "ran about 15 feet into the sheep;" that there was no light at U street; that the sheep were "kind of dirty, looked like the snow;" that snow was on the rails and they were "slippery;" that Twenty-fourth street south of U Street is on a down-grade; that he was in the service for about 8 years, and never before had he "seen any sheep being herded along either Railroad avenue or Twenty-fourth street at night."

An Omaha ordinance in evidence provides that a street car shall not exceed a speed of 15 miles an hour. Defendant argues that Oakes and Mosher were not qualified to testify on the question of speed. This court has held on this point that, while the evidence of an observer is not competent for the purpose of determining the exact speed of a street car, it is properly admissible as tending to support an allegation that the motorman failed to reduce its speed. *Zancanella v. Omaha & C. B. Street R. Co.*, 93 Neb. 774. Chief Jus-

tice Cooley observed that the speed of a passing train involves no question of science and is not a question for experts. He adds: "Any man possessing a knowledge of time and of distances would be competent to express an opinion upon the subject." *Detroit & M. R. Co. v. Van Steinburg,* 17 Mich. 99; *Omaha Street R. Co. v. Larson,* 70 Neb. 591; *Pierce v. Lincoln Traction Co.,* 92 Neb. 797.

The evidence as to the speed of the car is in direct conflict. But it is a question of fact for the jury, and, having been properly submitted, and having been determined by that body after seeing and hearing and observing the demeanor of the witnesses, we decline, under the oft-repeated rule, to disturb the verdict.

Defendant argues that the court erred in refusing to give an instruction offered by it to the effect that "defendant had a preferential right to operate its street cars" at the time and place of the accident. In *Omaha Street R. Co. v. Duvall,* 40 Neb. 29, it is said: "Street railway companies have no such proprietary interest in that portion of the streets upon which their tracks are laid as limits the right of the general public also to use the same territory as a part of the public highway. Whether an injury resulting from such joint use is attributable solely to the negligence of the railway company, or is wholly or in part imputable to contributory negligence of the person by whom injury has been sustained, is a question of fact to be determined by the jury."

In its brief defendant argues: "It was a direct affirmative act of gross negligence of the plaintiff to drive 280 head of sheep upon and along the street car tracks, in the nighttime, when the plaintiff was bound to anticipate that street cars would pass at frequent intervals." We do not think this objection is sound, in view of the fact that the court instructed the jury on comparative negligence. The question of negligence is for the jury, and, in view of the record before us, we

are not prepared to say that the evidence does not sustain the verdict in the respect noted.

Defendant further argues: "The court erred in instructing the jury that the plaintiff was entitled to recover damages if the motorman could have seen the sheep in time to have stopped the car and avoided running into them.   *   *   *   The last chance doctrine only applies in cases where the motorman had actual knowledge that the sheep were upon the track, and not to a case where he did not have actual knowledge." Our former decisions do not seem to go so far. *McKennan v. Omaha & C. B. Street R. Co.*, 97 Neb, 281, wherein a rehearing was denied, points out that the motorman in charge should exercise ordinary care to avoid a collision after he knew, or in the exercise of ordinary care should have known, the dangerous situation of the person or object in front of the car. In the *McKennan* case numerous decisions of this court are cited that hold to the same rule.

"Under what is commonly known as 'the last clear chance' doctrine, or as it is sometimes called, the 'doctrine of discovered peril,' or 'humanitarian doctrine,' a person may recover for injuries sustained through the negligent management or operation of a street railroad, although he is guilty of negligence in getting into a dangerous position upon or near the company's track, if, notwithstanding such negligence on his part, the servants of the company may, by the exercise of ordinary care and diligence, avoid injuring him after they discover his peril, or by the weight of authority after they discover, or by the exercise of reasonable care could discover, his peril in time to avoid the injury." 36 Cyc. 1565.

Besides the assignments of error discussed herein, we have examined those with respect to instructions given by the court and those offered by defendant which were refused, and also the objections made to the introduction of certain testimony by plaintiff. In

view of the record, we do not think there was prejudi--
cial error in the respects noted.    The case seems to
have been fairly submitted, and there is sufficient evi-
dence to support the verdict.    The judgment is

AFFIRMED.

LETTON and FLANSBURG, JJ., not sitting.